EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Mirtha Hernández, Galo Beltrán y la Sociedad de Gananciales<br>Recurridos<br><br>v.<br><br>Trans Oceanic Life Insurance Company<br>Peticionaria | Certiorari<br><br>2000 TSPR 115 |
| --- | --- |

Número del Caso: CC-1997-0695

Fecha: 30/06/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Jeannette Ramos Buonomo

Abogados de la Parte Peticionaria:

        Nevares, Sánchez-Alvarez & González-Nieto
        Lcdo. José A. Sánchez Alvarez
        Lcdo. Edgar A. Lee Navas

Abogados de la Parte Recurrida:

        Lcdo. Harry Anduze Montaño
        Lcdo. Guillermo Ramos Luiña

Materia: Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mirtha Hernández, Galo Beltrán
y la Sociedad de Gananciales

    Demandante recurrida

                         CC-97-695
        v.

Trans Oceanic Life
Insurance Company

    Demandada peticionaria

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN.

San Juan, Puerto Rico, a 30 de junio de 2000

     La Trans Oceanic Life Insurance Company (TOLIC), demandada y peticionaria, es una compañía que se dedica a expedir pólizas de seguros mediante agentes de seguros y agentes generales. En 1985, la Sra. Mirtha Hernández, demandante y recurrida, fue contratada para trabajar como agente de seguros en la referida compañía.

     Posteriormente, en mayo de 1986, TOLIC y la señora Hernández suscribieron un contrato mediante el cual la última fue nombrada agente general. El contrato establecía que la señora Hernández sería una contratista independiente, no una empleada de TOLIC.

Disponía, además, que dicha compañía no sería responsable por los gastos de la agencia de la señora Hernández, tales como renta, facilidades de transportación, gastos de abogado, secretaria, publicidad, licencias e impuestos.

El contrato de agencia también disponía que la señora Hernández tendría facultad para reclutar y recomendar a TOLIC agentes de seguros para trabajar bajo su supervisión. No obstante, la contratación de las personas recomendadas estaría sujeta a la aprobación de la compañía y se haría directamente con ésta. TOLIC se reservaba, además, el derecho de terminar el contrato de trabajo de los agentes de seguros por cualquier razón.

Una vez el contrato de agencia fue suscrito por las partes, la señora Hernández alquiló un local en el Edificio Vick Center, en el cual estableció su oficina. Los gastos para el establecimiento y el mantenimiento de la misma fueron sufragados por ella. Tras establecer su oficina, reclutó agentes de seguros y los preparó para el examen de licencia. La señora Hernández también supervisaba y orientaba a los agentes sobre las técnicas de mercadeo de los productos de TOLIC.

En TOLIC había dos agencias generales que se dedicaban a mercadear los mismos productos[1]: una era la de la señora Hernández y la otra estaba a cargo del Sr. Nicolás Touma y de la Sra. Carmen Taveras, casados entre sí.

En abril de 1988 se efectuó una reorganización en TOLIC. Como resultado de ésta, el señor Touma pasó a ocupar un nuevo cargo denominado Director de Agencias. Este puesto estaba adscrito a las oficinas centrales de TOLIC. La esposa del señor Touma, la señora Taveras, permaneció en la dirección de la agencia general.

De acuerdo con las determinaciones de hecho del foro de instancia, a partir de la fecha en que el señor Touma comenzó a desempeñarse como Director de Agencias, empezó a intervenir en asuntos administrativos

---

[1]     Esto es, pólizas de cáncer.

internos de la agencia de la señora Hernández. Adiestraba a los agentes y dictaba pautas en torno a cómo mercadear los productos. Incluso, presidía las reuniones mensuales con los agentes, labor que hasta ese momento había realizado la señora Hernández.

Cabe señalar, que desde que el señor Touma comenzó a desempeñar el puesto de Director de Agencias, se hicieron expresiones al efecto de que la señora Hernández, en vista de su edad, sesenta (60) años, debía asociarse con una persona más joven. Además, empleados y oficiales de TOLIC comenzaron a hacer comentarios y chistes sobre la edad de ésta y sobre lo que haría tras su retiro.

A mediados de 1988, el señor Touma le indicó a la señora Hernández que nombrara como coordinadoras de ventas a dos agentes de seguros que trabajaban en la agencia general dirigida por su esposa. El puesto de coordinadora de ventas era uno intermedio o de supervisión entre la agente general y los agentes de seguros. Cuando la señora Hernández recibió dichas instrucciones, le expresó al señor Touma que, en su opinión, estas agentes no tenían las cualificaciones necesarias para dedicarse a las labores de supervisión. No obstante, el señor Touma insistió y la señora Hernández acató sus indicaciones.

Las coordinadoras de ventas nombradas a recomendación del señor Touma renunciaron a sus puestos a finales de 1988. Cuando él advino en conocimiento de las renuncias, se reunió a solas con ellas. Luego de la reunión, las coordinadoras de ventas comentaron a los agentes que habría cambios en la agencia general de la señora Hernández.

Sin que la señora Hernández tuviese conocimiento de ello, en noviembre de 1988 el señor Touma y el Sr. Roberto Tirado, vicepresidente de TOLIC, se reunieron con todos los agentes de seguros que trabajaban bajo la supervisión de la demandante. En la reunión se discutieron las quejas de éstos respecto a la operación de la agencia general. Días más tarde, el señor Touma y el señor Tirado se reunieron con la señora Hernández para comunicarle las quejas de los agentes y buscar soluciones.

El 21 de noviembre de 1988 se celebró otra reunión a la que asistieron el señor Touma, el señor Tirado, la señora Hernández y todos los agentes. Antes de que ésta se iniciara, le sugirieron a la señora Hernández que planteara a los agentes que aquéllos a los que no les interesaba continuar trabajando con ella, estaban en libertad de marcharse. La demandante acogió dicha recomendación. El señor Touma y el señor Tirado repartieron papeles en blanco para que los agentes, mediante votación secreta, expresasen si deseaban continuar o no en la agencia de la señora Hernández. La idea de la votación secreta no había sido discutida previamente con ésta.

Como resultado de la votación, la señora Hernández se quedó con tres agentes. Los que expresaron su deseo de marcharse, en su mayoría, fueron trasladados a la agencia de la señora Taveras.

El volumen de las ventas de los agentes que permanecieron con la señora Hernández no era suficiente para sufragar los gastos del local que ella había alquilado. En consecuencia, decidió trasladar las operaciones de la agencia a su residencia. Allí continuó operando hasta el 31 de diciembre de 1989, día en que se le canceló un subsidio de dos mil dólares ($2,000) mensuales que TOLIC le otorgaba en concepto de adelanto de comisiones. Se cancelaron, además, los contratos de los agentes de seguros que trabajaban con ella.

Después de estos incidentes, la señora Hernández sufrió de depresión y recibió tratamiento siquiátrico. Desde entonces y hasta el momento de la celebración de la vista, estuvo incapacitada para trabajar, según testimonio pericial incontrovertido.

El 16 de octubre de 1990, la señora Hernández y su esposo, Galo Beltrán, por sí y en representación de la sociedad de gananciales compuesta por ambos, presentaron una demanda al amparo de la Ley Núm. 75 de 29 de junio de 1969, según enmendada, 10 L.P.R.A. sec. 278 y ss[2]; la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec.

---

[2] La demandante desistió de dicha reclamación y el foro de instancia la desestimó mediante sentencia parcial.

185 y ss; la Ley Núm. 100 de 1959, según enmendada, 29 L.P.R.A. sec. 146 y ss (en adelante Ley 100) y el Age Discrimination in Employment Act, (ADEA), 29 U.S.C. sec. 621.   El 7 de febrero de 1996 el foro de instancia declaró con lugar la demanda.

Inconforme, TOLIC presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, (Tribunal de Circuito)[3]. Dicho tribunal, mediante sentencia archivada en autos el 7 de agosto de 1997 confirmó el dictamen del foro de instancia.

Oportunamente, TOLIC presentó ante nosotros un recurso de certiorari con los siguientes señalamientos de error:

PRIMER ERROR: Erró el Tribunal de Circuito de Apelaciones al concluir que entre la demandante [señora Hernández] y TOLIC existía una relación de patrono-empleado y no una de principal-contratista independiente.
SEGUNDO ERROR: Erró el Tribunal de Circuito de Apelaciones al resolver que el "test" aplicable al caso de autos es el grado de control y no el de realidad económica.

TERCER ERROR: Erró el Tribunal de Circuito de Apelaciones en la apreciación de la prueba que alegadamente [sic] demostró que la Sra. Mirtha Hernández era una empleada de TOLIC y que ésta última discriminó contra la primera por razón de edad.

CUARTO ERROR: Erró el Tribunal de Circuito de Apelaciones al no considerar, ni disponer- y ni siquiera hacer mención- de [e]rrores cometidos por el Tribunal de Instancia y que se le señalaron en el escrito de apelación sometídole.

---

[3]     TOLIC le imputó al foro de instancia haber incurrido en los siguientes errores:
    Primer error: Erró el Tribunal de Instancia al concluir que entre la demandante [señora Hernández] y TOLIC existía una relación de patrono-empleado y no una de principal-contratista independiente.
    Segundo error: Aún si la demandante [señora Hernández] era una empleada de TOLIC, erró el Tribunal de Instancia al concluir que ésta había sido discriminada por su edad.
    Tercer error: Erró el Tribunal en la apreciación de la prueba que alegadamente [sic] demostró que la Sra. Mirtha Hernández era un empleada de Tolic y que ésta última discriminó contra la primera por razón de edad.
    Cuarto error: La compensación otorgada a la demandante fue excesiva a la luz de los hechos del presente caso.

I

Por estar íntimamente relacionados, discutiremos conjuntamente los señalamientos de error uno y dos.  TOLIC indica que la señora Hernández era una contratista independiente y no una empleada de dicha compañía. Alega, además, que el Código de Seguros, 26 L.P.R.A. sec. 101 y ss dispone expresamente que el agente general será un contratista independiente.  Para resolver las controversias ante nuestra consideración es preciso examinar e interpretar las disposiciones del Código de Seguros en cuanto a los agentes generales y nuestra jurisprudencia en torno a la distinción entre un contratista independiente y un empleado.

El Art. 3.340 del Código de Seguros, supra, 26 L.P.R.A. sec. 334, define al agente general como:

> una persona nombrada o contratada por un asegurador **como contratista independiente o por comisión, total o parcialmente**, con poderes o deberes generales para inspeccionar el otorgamiento y las operaciones de servicio de pólizas del asegurador, nombrar agentes para el asegurador y llevar a cabo otras funciones que se confieran a agentes generales por la costumbre de la clase o clases de seguros hechos o el tipo de asegurador representado. (Énfasis nuestro.)

Reiteradamente hemos expresado que al interpretar el texto de una ley, los tribunales debemos respetar la voluntad legislativa y atribuirle un sentido que asegure el resultado que el legislador quiso obtener originalmente.  Piñero v. A.A.A., res. el 23 de octubre de 1998, 98 T.S.P.R. 141; Col. Ópticos P.R. v. Pearle Vision Center, res. de 10 de enero de 1997, 142 D.P.R. ___, 97 J.T.S. 1.  Es norma reconocida, además, que las diferentes secciones, artículos y apartados de una ley, no deben interpretarse aisladamente sino en conjunto, buscando la intención legislativa.  Mun. San Juan v. Banco Gub. Fomento, res. el 21 de mayo de 1996, 140 D.P.R. ___; 96 J.T.S. 73; Ojeda v. El Vocero, 137 D.P.R. 315 (1994).

Según la definición del Código de Seguros, supra, el puesto de agente general puede ser desempeñado por un contratista independiente.

Otras disposiciones del Código sugieren, a su vez, que el referido cargo también puede ser ocupado por un gerente. Véase, a manera de ejemplo, el Art. 3.340 del Código de Seguros, supra, 26 L.P.R.A. sec. 334 (2), el cual indica:

> El asegurador que nombrare a una persona **como agente general o gerente** para representarlo como tal en Puerto Rico deberá dar aviso por escrito del nombramiento al Comisionado en los formularios que éste prescriba y suministre. (Énfasis nuestro.)

Por su parte, el art. 3.340 (3), supra, en lo pertinente dispone:

> Dicho **agente general o gerente** tendrá la autoridad, consistente con este título, que se le confiera por el asegurador. (Énfasis nuestro.)

Al analizar conjuntamente dichas disposiciones surge con meridiana claridad que el Código de Seguros, supra, no impone la obligación de que el puesto de agente general tenga que ser desempeñado por un contratista independiente. Es decir, el cargo de agente general puede ser ocupado tanto por un contratista independiente como por un empleado de la compañía aseguradora que se desempeñe en capacidad de gerente.

De otra parte, en Estados Unidos se ha definido al agente general de la siguiente forma:

> "[t]he general agent is a form of sales executive or **manager**, or perhaps a distributor, who stands between the insurer and the salesman to the ultimate customer either as an **employee** or **contracting representative**". (Énfasis nuestro.) Bertram Harnatt, Responsibilities of Insurance Agents and Brokers, New York, Mathew Bender & Company, 1989, Vol. I, págs. 2-6 y 2-7.

Además, se ha expresado que cuando un **gerente también se desempeña como agente general**, es un *alter ego* de la compañía. Incluso, se ha señalado que el **gerente** de una oficina central del asegurador, en la mayoría de los casos, será considerado un **agente general**. Lee R. Russ; Thomas F. Segalla, Couch on Insurance 3D, 3ra ed., Minnesota, Ed. West Publishing Co., Vol. III, 1997. De lo anterior surge con claridad que en Estados Unidos el cargo de agente general puede ser ocupado tanto por un empleado de la compañía aseguradora como por un contratista independiente.

Procedemos, por lo tanto, a analizar lo que dispone nuestra jurisprudencia sobre el contratista independiente.

Repetidamente hemos examinado la figura del contratista independiente, en específico, en el ámbito de la responsabilidad extracontractual y en el laboral. Hemos resuelto que para determinar si existe una relación entre patrono y empleado o contratista independiente y principal, **"la caracterización o denominación que hagan las partes respecto a la naturaleza de sus relaciones no es decisiva"**. Bengochea v. Ruiz Torres, 103 D.P.R. 68, 71 (1974); Nazario v. Vélez, 97 D.P.R. 458, 463 (1969). En otras palabras, lo que disponga el contrato laboral no es determinante ni decisivo en el momento de definir la relación entre las partes.

Para determinar si estamos ante un contratista independiente es preciso examinar los hechos que originaron la controversia tomando en cuenta, a su vez, una serie de factores señalados por nuestra jurisprudencia. Esto se debe a que, por lo general, en este tipo de controversias se reúnen rasgos característicos tanto de empleado como de contratista independiente. En consecuencia, en raras ocasiones encontramos situaciones donde exista una tajante distinción entre ambos. Fernández v. A.T.P.R., 104 D.P.R. 464, 465 (1975); Nazario v. González, 101 D.P.R. 569, 572 (1973); Pérez v. Hato Rey Bldg. Co., 100 D.P.R. 882, 888 (1972); Landrón v. J.R.T., 87 D.P.R. 94, 102 (1963).

El foro de instancia utilizó el factor de retención de control como criterio rector para determinar la naturaleza de la relación entre las partes. TOLIC, por el contrario alega que, de acuerdo con nuestra decisión en Avon Products, Inc. v. Srio. del Trabajo, 105 D.P.R. 803 (1977), el examen apropiado para ello es el de realidad económica. No le asiste la razón. Veamos.

En Nazario v. Vélez, 97 D.P.R. 458 (1969), expresamos que debe atenderse principalmente al factor de realidad económica, cuando el recurrir a las clasificaciones técnicas que puedan prevalecer en otras áreas del derecho, conduzca a una solución injusta al interpretar

estatutos reparadores como la Ley de Seguridad de Empleo de Puerto Rico, 29 L.P.R.A. sec. 702 y ss y la Ley de Salario Mínimo, 29 L.P.R.A sec. 245 y ss. Posteriormente, en Avon Products, Inc. v. Srio. del Trabajo, 105 D.P.R. 803 (1977), indicamos que dicho factor ayuda a lograr protección para un mayor número de empleados y, en casos específicos, a lograr soluciones compatibles con los propósitos de los estatutos reparadores. También señalamos que el factor de realidad económica requiere la consideración, a su vez, de varios criterios, como el grado de control, las oportunidades de pérdida e inversión en facilidades, pero que ninguno de éstos es, por sí solo, determinante. En consecuencia, nuestra decisión en Avon Products, Inc. v. Srio. del Trabajo, 105 D.P.R. 803 (1977), no tiene el alcance que pretende TOLIC, de imponer el estándar de realidad económica como el criterio rector para determinar si estamos ante un contratista independiente o un empleado.[4]

De otra parte, en Mariani v. Christy, 73 D.P.R. 782 (1952), dispusimos que el grado de control que se pueda reservar el principal sobre la ejecución del trabajo es el criterio rector para dilucidar si la relación laboral entre los litigantes es de empleado y patrono o de principal y contratista independiente. Es menester señalar, no obstante, que se trataba de un caso de daños y perjuicios, no de índole laboral[5]. También hemos sido enfáticos y consistentes al indicar que **la determinación de quién es un contratista independiente no depende de factor aislado alguno, sino que hay que examinar el conjunto de circunstancias en que se desenvuelve la relación laboral**. Fernández v. A.T.P.R., 104 D.P.R. 464, 465 (1975). Hemos expresado, además, que para dicha determinación no existe una regla absoluta, sino que depende

---

[4]    Sin embargo, el estándar de realidad económica debe utilizarse cuando se interpretan estatutos reparadores, como la Ley de Salario Mínimo, supra, o la Ley de Seguridad de Empleo de Puerto Rico, supra, y el utilizar otros criterios conlleve una solución injusta.

[5]    En Nazario v. Vélez, 97 D.P.R. 458, 460 (1969), nota al calce núm. 1, aclaramos que en el campo de la **responsabilidad extracontractual** se

de la importancia que se le atribuya a cada uno de los factores. Nazario v. Vélez, 97 D.P.R. 458, 465 (1969).

Entre los factores que se deben tomar en consideración para dilucidar si una persona se desempeña como un contratista independiente están los siguientes: (i) la naturaleza, extensión y grado de control por parte del principal; (ii) el grado de iniciativa o juicio que despliega el empleado; (iii) la propiedad del equipo; (iv) la facultad de emplear y el derecho a despedir; (v) la forma de compensación; (vi) la oportunidad de beneficio y el riesgo de pérdida y (vii) la retención de contribuciones. Martínez v. U.C.B., res. el 11 de junio de 1997, 143 D.P.R. __ (1997); 97 J.T.S. 98, pág. 1225; Fernández v. A.T.P.R., 104 D.P.R. 464, 465 (1975); Bengochea v. Ruiz Torres, 103 D.P.R. 68, 71 (1974); Admor., F.S.E. v. Comisión Industrial, 101 D.P.R. 6, 8 (1973); Nazario v. Vélez, 97 D.P.R. 458, 460 (1969).

Procedemos a examinar el conjunto de circunstancias presentes en la relación de trabajo entre la señora Hernández y TOLIC, ponderando cada uno de los factores enumerados anteriormente, para determinar si entre éstos existía una relación de empleado y patrono o de principal y contratista independiente. Según ya expresáramos, el contrato suscrito entre las partes disponía expresamente que la señora Hernández era una contratista independiente,[6] sin embargo, dicha clasificación no dispone de la controversia ante nos.

Respecto al factor naturaleza, extensión y grado de control, hemos expresado que:

---

incorporó la doctrina del contratista independiente, con el factor de **control** como determinante para su aplicación.

[6]   La cláusula contractual pertinente, la novena, dispone lo siguiente:

> RELATIONSHIP: **The relationship of General Agent with Company shall be that of an independent contractor and not as an employee of Company.**

> Company shall not be responsible for any expenses of General Agent including but not by way of limitation, expenses such as rentals, transportation facilities, clerk hire, attorney's fees, postage, advertising, foreign exchange, personal license fees, local license fees, municipal taxes, county

es natural que en todo contrato de servicios, bien se rindan éstos en calidad de contratista independiente, el patrono siempre se reserve cierto grado de control a fin de asegurarse de que el servicio se lleva a cabo debidamente y en coordinación con las demás actividades del patrono. Fernández v. A.T.P.R., 104 D.P.R. 464, 467 (1975).

Es decir, que el hecho de que el principal ejerza algún grado de control sobre el trabajo del contratista independiente para asegurarse de que los servicios se presten de forma eficiente, no significa, por sí solo, que estemos ante una relación entre patrono y empleado.

Al examinar el grado de control que ejercía TOLIC sobre las labores de la señora Hernández, el foro de instancia prestó especial atención a dos (2) cláusulas contractuales: la tercera, relacionada con la autoridad de la señora Hernández sobre los agentes de seguros, y la décimo séptima. Examinaremos primeramente la cláusula diecisiete. Esta versaba sobre la terminación del contrato suscrito por las partes y dispone en su parte pertinente, lo siguiente:

> TERMINATION: Powers of General Agent, shall cease upon termination of this Contract **which may be terminated at any time by either party upon written notice to the other**, mailed to the last known address, stating the date when such termination shall be effective. Not withstanding anything contained herein to the contrary, **either party may terminate this Contract forthwith**, for cause, in the event that the other party has failed to comply with the provisions of this Contract. (Énfasis nuestro.)

De la lectura de la cláusula citada se desprende que ésta no es determinante para concluir que la relación entre las partes era de patrono y empleado, ni dispone de la controversia ante nuestra consideración. En la misma se establece que si bien TOLIC se reservaba el derecho de terminar el contrato de agencia en cualquier momento, la señora Hernández poseía igual prerrogativa.

Examinaremos los factores de control, iniciativa o juicio. La señora Hernández tenía una oficina independiente de TOLIC y de la exposición narrativa surge que poseía exclusiva potestad sobre el manejo de la misma. Sufragó todos los gastos que conllevó el establecimiento de su oficina. Además, al comienzo de sus relaciones

---

taxes, occupational taxes and any other agency expenses of

con TOLIC, adiestraba a los agentes en cuanto a cómo mercadear los productos de TOLIC y los preparaba para el examen de licencia. La señora Hernández no podía alterar los términos, las tarifas ni las condiciones de las pólizas de seguros y tampoco podía publicar anuncios sin la previa aprobación de TOLIC. Esto, sin embargo, era una reserva de control razonable, mediante la cual la compañía se aseguraba que la venta y mercadeo de sus productos se realizasen de forma ordenada y uniforme. De otra parte, a tenor con el contrato de agencia, la señora Hernández podía dedicarse a vender artículos que no compitiesen con los de TOLIC.

Luego de evaluar la evidencia que le fuera presentada, el foro de instancia encontró probado que una vez el señor Touma comenzó como Director de Agencias, hubo cambios sustanciales en la relación entre las partes. Este empezó a intervenir cada vez más en los asuntos internos de la agencia de la señora Hernández. Comenzó a adiestrar a los agentes, dictar pautas de mercadeo y presidir las reuniones mensuales con los agentes. El puesto de Director de Agencias estaba adscrito a TOLIC, por lo tanto, la intervención del señor Touma con la agencia de la señora Hernández y el trabajo de ésta, constituía un ejercicio de mayor control por parte de la compañía.

Otro de los factores señalados por la jurisprudencia es la facultad de contratar y el derecho a despedir que tiene el contratista independiente, criterio que por su naturaleza está entrelazado con el grado de control que TOLIC ejercía sobre la señora Hernández. TOLIC se reservó ambas prerrogativas en el contrato de agencia: la facultad de contratar y despedir agentes de seguros que estaban bajo la supervisión de la señora Hernández.[7] Ésta sólo tenía facultad para reclutar y recomendar a TOLIC.

---

whatever kind or description. (Énfasis nuestro.)

[7] La cláusula contractual pertinente, la número tres, dispone lo siguiente:

AUTHORITY OVER SUB-AGENTS: General agent has the authority to recruit and recommend to Company, subject to its approval,

Sobre este particular TOLIC argumenta, en síntesis, que se reservó dicha facultad porque así lo dispone el Código de Seguros, supra. De acuerdo con su interpretación, los agentes no pueden ser contratados directamente por el agente general ya que el asegurador tiene una responsabilidad indelegable en cuanto a las actuaciones de éstos. No le asiste la razón.

El Art. 9.010 del Código de Seguros, supra, 26 L.P.R.A. sec. 901, establece que un agente de seguros es "la persona, razón social o corporación <u>nombrada por un asegurador</u> para gestionar solicitudes de seguros en su nombre". No obstante, el Art. 3.334, anteriormente citado, indica que el agente general tendrá facultad para **"nombrar agentes para el asegurador"**. (Énfasis suplido.) De lo anterior se puede colegir que el Código de Seguros no prohibe que el agente general nombre agentes de seguros, ni impone la obligación de que éstos sean nombrados por el asegurador. Es decir, un agente general podría tener o no dicha prerrogativa.

En torno a la forma de compensación, la señora Hernández cobraba exclusivamente a base de comisiones por las ventas, lo cual, por sí solo, no impide el que una persona sea considerada empleada. <u>Nazario</u> v. <u>González</u>, 101 D.P.R. 569, 573 (1973).

En torno a la oportunidad de beneficio y el riesgo de pérdida de la señora Hernández, ambas dependían del volumen de las ventas de su agencia. TOLIC no le pagaba un salario, simplemente le adelantaba dos mil ($2,000) dólares de comisiones mensuales para las operaciones de la oficina. Por último, TOLIC tampoco efectuaba descuentos en concepto de

---

Soliciting Agents or Brokers (hereinafter referred to as "Sub-Agents") [.] All contracts with any recommended Sub-Agent shall be made directly with Company on Company´s form showing General Agent's signature of recommendation thereon. No agreement shall be effective and no Sub-Agent may represent Company until the proposed Sub-Agent is duly licensed in the jurisdictions in which soliciting and appointed to represent Company and the same has been executed by an officer of Company. Company reserves the right to refuse to contract with any recommended Sub-Agent, or, once made, to thereafter terminate the same for any reason.

contribuciones sobre ingresos ni de seguro social a la señora Hernández.

En el ámbito laboral, la determinación de si una persona se desempeña o no como contratista independiente depende de un análisis ponderado de la totalidad de las circunstancias que rodean la relación, tomando en cuenta los factores previamente analizados. De la totalidad de los hechos en este caso, surge que la señora Hernández comenzó a ejercer su puesto en TOLIC como contratista independiente, pero a partir de 1988 hubo un cambio sustancial en las relaciones entre las partes, que la colocaron en la categoría de una empleada de la referida corporación. La presencia de algunos factores característicos de un contratista independiente, por sí sola, no determina la condición de una persona como tal, si de una ponderación de la totalidad de las circunstancias surge que ésta en realidad se desempeñaba como empleada. Nazario v. González, 101 D.P.R. 569, 574 (1973).

II

En su tercer señalamiento, TOLIC argumenta que el Tribunal de Circuito erró al apreciar la prueba que tuvo ante su consideración y resolver que la misma demostraba que la señora Hernández era una empleada de TOLIC y que esta última discriminó contra ella por razón de edad avanzada.

La señora Hernández presentó su reclamación de discrimen por razón de edad avanzada al amparo de la Ley 100 y ADEA. El foro de instancia resolvió la controversia a base de la Ley 100, y concluyó que la señora Hernández fue despedida por razón de edad avanzada.

La Ley 100 prohibe el discrimen en el ámbito laboral por razón de edad, raza, color, religión, sexo, ideas políticas o religiosas, origen social o nacional y condición social. En lo pertinente al caso de autos, el título de la Ley 100 indica que se aprobó para proteger a los obreros y aspirantes a empleo contra discrímenes de los patronos u organizaciones obreras *por razón de edad avanzada.*

En la Exposición de Motivos se expresó que el creciente desarrollo industrial y progreso económico que la Isla había experimentado en esa época hacía necesario anticipar "los problemas que[,] de acuerdo a la experiencia obtenida en pueblos más intensamente desarrollados en el orden industrial[,] tal desarrollo conlleva".  Se identificó como uno de esos problemas "la práctica que ya [comenzaba] a observarse en Puerto Rico, de discriminar en el empleo de personas por razones de edad exclusivamente".  Se hizo mención de estadísticas recopiladas en los Estados Unidos que reflejaban que el "40% de las personas que solicita[ban] empleos [habían] cumplido 45 años de edad, tan sólo 22% de las personas aceptadas para empleos [eran] mayores de esa edad".  La ley que finalmente se aprobó prohibía *el discrimen por razón de edad avanzada* que se definía como la "edad comprendida entre los 30 y 65 años".  Sandoval v. Caribe Hilton International, Op. concurrente emitida por la Juez Asociada señora Miriam Naveira de Rodón, sentencia en reconsideración de 25 de octubre de 1999, 99 T.S.P.R. 161, 99 J.T.S. 166, pág. 314.  Como se desprende de lo antes mencionado, **el discrimen por razón de edad avanzada es sólo una de las modalidades por razón de edad sancionadas por la Ley 100.**

El Art. 3 de la Ley 100, supra, 29 L.P.R.A. sec. 148 (en adelante Art. 3), a su vez, establece una presunción de despido discriminatorio.[8] Consistentemente hemos resuelto que la presunción del Art. 3 entra en juego **en la etapa probatoria del caso**; o sea, la presunción se activa en la vista evidenciaria que se celebre, no antes.

Creemos que es importante tener presente que el Art. 3 no altera en su totalidad el esquema probatorio que prevalece en nuestra jurisdicción, donde una vez presentada la demanda, le corresponde a la parte demandante en la vista en su fondo comenzar con la presentación

---

[8]    El Art. 3 dispone lo siguiente:

Se presumirá que cualquiera de los actos mencionados en las secciones precedentes fueron cometidos en violación de las secciones 146 a 151 de este título, **cuando <u>los mismos</u> hayan**

de la prueba de sus alegaciones, antes de que la parte demandada venga obligada a rebatirla.  Si la parte demandante no presenta prueba suficiente para sostener sus alegaciones, la parte demandada no tiene que defenderse, procede la desestimación de la demanda en esta etapa. Véase Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. App. IV.

Ahora bien, la intención del Art. 3 y la presunción que allí se establece es facilitarle al empleado el probar su caso, no el relevarlo de la necesidad de presentar evidencia alguna para probar sus alegaciones.

Al amparo del Art. 3, el esquema procesal con respecto a la presentación de la prueba es el siguiente.  El peso de la prueba para establecer las bases de su reclamación le continúa correspondiendo inicialmente al empleado.  Este tiene que comenzar presentando prueba que demuestre, primero, que hubo un despido o acto perjudicial; segundo, que éste se realizó sin justa causa; y tercero algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama.  Una vez el empleado cumple con esta primera fase surge la presunción de discrimen del Art. 3.  Es decir, el empleado no tiene que probar el acto discriminatorio que es objeto de la presunción.

El peso de la prueba cambia, el _onus probandi_ recae entonces sobre el patrono.  Si el patrono no presenta prueba alguna en esta etapa se considera que el empleado ha probado su caso de discrimen restando sólo la presentación de la prueba sobre los daños.

De otra parte, si el patrono decide defenderse, tiene varias alternativas.  Éste puede presentar prueba que rebata la presunción de discrimen activada por el empleado; o puede optar por presentar prueba de que el despido fue justificado; o que no hubo tal despido; o que a pesar de haber habido un despido injustificado éste no fue discriminatorio.

---

**sido realizados sin justa causa**.  Esta presunción será de carácter controvertible. (Énfasis suplido.)

Una vez el patrono presenta su prueba rebatiendo la presunción de discrimen del Art. 3, el empleado todavía tiene otra oportunidad. Puede presentar evidencia para probar su caso, o sea probar que realmente hubo un despido discriminatorio, pero esta vez lo tendrá que hacer sin el beneficio de la presunción. Tendrá que presentar evidencia de incidentes o hechos que prueben dicho discrimen o de los cuales se pueda inferir la alegada actuación discriminatoria. Este es el esquema probatorio establecido por el Art. 3.[9] **Sus efectos son con respecto a la presentación de la prueba en la vista en su fondo que se celebre en instancia, no con relación a la mera presentación de las alegaciones.**[10]

---

[9] Para jurisprudencia interpretativa véase, Regla 14 de Evidencia, 32 L.P.R.A. Ap. IV; Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994). El patrono debe demostrar **mediante la preponderancia de la prueba** que la existencia de discrimen es menos probable que su inexistencia. Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 502 (1985). Si el patrono demuestra que la razón para el despido no fue discriminatoria, derrota la presunción. El empleado demandante aún puede prevalecer si presenta prueba que establezca la existencia de discrimen. Belk v. Martínez, res. el 30 de junio de 1998, 98 T.S.P.R. 109, 98 J.T.S. 92, pág. 1315; Ibáñez v. Molinos de P.R., 114 D.P.R. 42, 55 (1983).

De otra parte, hemos resuelto que si luego de presentada la totalidad de la evidencia queda demostrado que la razón para el despido no fue discriminatoria, pero el patrono demandado no logra establecer que hubo una causa justificada para despedir al empleado, el tribunal deberá concluir que el despido fue uno injustificado. Bajo estas circunstancias, el empleado demandante sólo será acreedor de los remedios provistos por la Ley Núm. 80. Belk v. Martínez, res. el 30 de junio de 1998, 98 T.S.P.R. 109, 98 J.T.S. 92, pág. 1315.

[10] El proceso se puede resumir así: (1) se presenta demanda alegando sucinta y sencillamente despido injustificado y discriminatorio ("notice pleading" - Regla 6.1 de Procedimiento Civil, 32 L.P.R.A. App. IV); (2) se celebra una vista evidenciaria donde el empleado-demandante presenta prueba de que hubo despido injustificado y que, por ejemplo, tenía 66 años de edad o que tenía 30 años de servicio y 52 años de edad, o sea, un hecho base que identifica el acto discriminatorio. El hecho base a probarse y la manera de hacerlo para que surja la presunción al amparo del Art. 3 no es inflexible, **se aplica caso a caso**. En esta etapa, el patrono, si interesa defenderse, puede presentar evidencia para rebatir la presunción. Si la rebate, el empleado todavía tiene la oportunidad de presentar prueba de hechos específicos para probar su caso, sin el beneficio, claro está, de la presunción. Como vemos, la presunción ofrece una ventaja inicial, pero una vez rebatida se desvanece la ventaja probatoria. Ahora bien, la evidencia indicativa necesaria para activar la presunción del Art. 3 no responde al quantum probatorio usualmente requerido. Si fuese así, trastocaría el beneficio de la presunción otorgada legislativamente. O sea, la evidencia indicativa no requiere la presentación de prueba suficiente para probar el hecho, mas sí la presentación de algún elemento básico de la modalidad de discrimen alegada que la identifique

En otras palabras, para activar la presunción de discrimen, el empleado demandante tiene que probar tres (3) elementos: (1) que hubo un despido o acción perjudicial; (2) que éste se realizó sin justa causa. Belk v. Martínez, res. el 30 de junio de 1998, 98 T.S.P.R. 109. El empleado, además, (3) tiene que presentar evidencia indicativa de la modalidad de discrimen que se vincula a su despido.[11] En ese momento es que se activa la presunción.[12]

Pasemos ahora a aplicar las normas de derecho previamente reseñadas a los hechos específicos de este caso.

### III

Para resolver la presente controversia debemos determinar, en primer lugar, si se presentó la evidencia de la cual se pueda inferir que la señora Hernández fue despedida.[13] TOLIC alega que no la despidió

---

y ponga a la parte adversa en posición de poder rebatirla o al tribunal en posición de determinarla.

[11] En el caso de autos, prueba de la edad de la demandante que la ubica en las edades críticas más susceptibles al discrimen en la fuerza laboral sería suficiente para activar la presunción de que el despido injustificado fue uno discriminatorio por razón de edad avanzada.

[12] En la jurisdicción federal, ADEA es la legislación contraparte de la Ley 100 respecto a las reclamaciones de discrimen por edad. ADEA, sin embargo, no establece específicamente una presunción de discrimen a favor del empleado. El Tribunal Supremo Federal, sin embargo, al determinar cuáles son los requisitos necesarios para que un empleado se considere que ha presentado un caso prima facie de discrimen al amparo de ADEA, ha establecido jurisprudencialmente lo que equivale a una presunción de discrimen. Véase, Ibáñez v. Molinos de P.R., 114 D.P.R. 42, 48 (1983); E. Chiesa, *Sobre la validez constitucional de la presunciones*, 14 Rev. Jur. U.I.A. 727 (1980).

Bajo la legislación federal el empleado demandante tiene la obligación inicial de establecer un caso prima facie de discrimen probando, en casos de discrimen por edad, que: (i) pertenece a la clase protegida por la legislación, es decir, que se encuentra entre los cuarenta(40) y los setenta (70) años de edad (hecho base para la presunción de discrimen); (ii) está cualificado para ejercer las funciones de su puesto (de esto se infiere que el despido fue injustificado); (iii) fue despedido y (iv) fue sustituido por una persona más joven (hecho base adicional para establecer la inferencia de discrimen). Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 305 (1994). En Puerto Rico, debido a la existencia de la presunción establecida por el Art. 3, no es necesario probar todos estos requisitos.

[13] Debemos recalcar que el caso ante nos se condujo bajo el procedimiento ordinario, no bajo el extraordinario de la Ley Núm. 2, lo cual permitía un descubrimiento amplio de prueba.

ya que nunca le canceló su contrato. Añade que sólo le retiró el subsidio de dos mil dólares ($2,000) mensuales que le otorgaba en concepto de adelanto de comisiones. No podemos aceptar esta interpretación de los hechos probados.

La Ley Núm. 80 de 30 de mayo de 30 de mayo de 1976, 29 L.P.R.A. secs. 185 y ss, dispone al menos tres (3) situaciones concebibles como un despido: (i) la cesantía del empleado; (ii) la suspensión indefinida que se prolongue por un periodo mayor de tres (3) meses y (iii) una renuncia del empleado motivada por actuaciones del patrono, tales como la imposición de condiciones de trabajo onerosas.[14] Soc. de Gananciales v. Royal Bank, res. el 1 de abril de 1998, 145 D.P.R. __ (1998), 98 J.T.S. 37.

Hemos expresado, además, que el despido no tiene que ser expreso. Los actos voluntarios e injustificados de un patrono encaminados a obligar a un empleado a dejar su puesto constituyen un despido cuando la única alternativa razonable que le queda al empleado es la de abandonar su cargo. Vélez de Reilova v. R. Palmer Bros., Inc., 94 D.P.R. 175, 178 (1967).

Al aplicar los pronunciamientos anteriormente esbozados a los hechos específicos de este caso, concluimos que la parte demandante probó que la señora Hernández fue despedida sin justa causa. A ésta, sin aparente razón, no sólo le retiraron el adelanto por comisiones, sino que también le cancelaron el contrato de los tres agentes de seguros que quedaban bajo su supervisión. No cabe duda de que estos actos tenían el propósito de obligarla a dejar su empleo, por lo tanto, constituyeron un despido injustificado.[15]

---

[14] Véase el Art. 5 de la Ley Núm. 80, supra, 29 L.P.R.A. sec. 185e.
[15] Véase, Belk v. Martínez, res. el 30 de junio de 1998, 98 T.S.P.R. 109, 98 J.T.S. 92, pág. 1314; Soto v. Hotel Caribe Hilton, 137 D.P.R. 294(1994).

Para determinar el significado de "justa causa" hemos acogido como punto de referencia y sin pretender ser exhaustivos, las disposiciones del Art. 2 de la Ley Núm. 80, supra, sec. 185b.[16]

Para recapitular, el foro de instancia encontró probado que los actos de TOLIC conducidos a incapacitar a la señora Hernández para trabajar constituyeron un despido. También hubo prueba de que la señora Hernández cumplía con sus deberes con la compañía a tenor con lo estipulado en el contrato entre ambos, por lo que no existía justa causa para su despido.

Ahora bien, si el empleado que es despedido injustificadamente presenta además, evidencia que señalen la modalidad del discrimen alegado, se activa la presunción establecida por la Ley Núm. 100, supra. Véase, Menzel v. Western Auto Supply Company, 848 F. 2d 327 (1988).

En el caso de autos se probó que la señora Hernández estaba dentro del grupo protegido, ya que tenía sesenta (60) años de edad al momento del despido injustificado. Así, la presunción del Art. 3 quedó activada. Además, la demandante presentó prueba de incidentes de los cuales se podía inferir razonablemente dicha causa discriminatoria.

---

[16]    El Art. 2 de la Ley Núm. 80, supra, en lo pertinente, dispone:
    Se entenderá por justa causa para el despido de un empleado de un establecimiento:
    (a) Que el obrero siga un patrón de conducta impropia o desordenada.
    (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
    (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
    (d) Cierre total, temporero o parcial de las operaciones del establecimiento.
    (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
    (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

Presentó prueba de que el vicepresidente de TOLIC le sugirió en varias ocasiones que se asociara con una de las agentes de seguros, ya que ésta última era más joven que ella. También hubo testimonio a los efectos de que el vicepresidente de TOLIC, al menos en una ocasión, hizo comentarios jocosos en torno a la edad de la señora Hernández. Finalmente, el foro de instancia encontró probado que los eventos que se suscitaron a partir de la renuncia de las coordinadoras de ventas que culminaron con el éxodo de los agentes de seguros de la señora Hernández, ocurrieron porque ésta se negó a darle cabida en la dirección de su agencia a "sangre joven", como le habían recomendado en TOLIC. No cabe duda que los elementos antes reseñados son suficientes no sólo para activar la presunción de discrimen por razón de edad del Art. 3 a favor de la demandante, sino para probar el alegado discrimen.

De otra parte, para rebatir la presunción de despido discriminatorio por razón de edad avanzada, TOLIC adujo que las acciones que afectaron a la Sra. Hernández se tomaron porque ésta incurrió en actos de deslealtad contra la compañía al anunciar que estaba interesada en vender productos de la competencia. Sin embargo, el foro de instancia no le dio crédito a estas excusas. Encontró probado que la señora Hernández sólo estaba interesada en vender productos que no competían con los de TOLIC, acto permitido por el contrato de agencia suscrito entre las partes.

En resumen, no sólo se activó la presunción de discrimen del Art. 3, sino que se presentó prueba específica de la cual se podía inferir el alegado discrimen. A TOLIC le correspondía controvertirla. No lo hizo. Se limitó a argumentar que si hubo despido, el mismo fue justificado porque la señora Hernández deseaba mercadear productos de la competencia. Esta teoría no le mereció credibilidad al foro de instancia. No cabe duda que quedó probado que el despido fue uno

---

No se considerara despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento.

injustificado motivado por discrimen por razón de edad avanzada sujeto a las disposiciones de la Ley 100.

Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Circuito de Apelaciones, Región Judicial de San Juan.[17]

Miriam Naveira de Rodón
Juez Asociada

---

[17] En su último señalamiento, TOLIC argumenta que el Tribunal de Circuito no discutió todos los errores planteados en el recurso de apelación. Específicamente, se refiere a su alegación de que en el Informe de Conferencia Preliminar entre abogados, la señora Hernández aceptó que se desempeñó como contratista independiente durante los primeros años de la relación y que fue impropio del foro de instancia cambiar dicha admisión al establecer que ciertas cláusulas contractuales la convertían en una empleada desde el principio.

En el Informe sobre Conferencia Preliminar se expuso que una de las controversias de derecho que el tribunal de instancia debía dilucidar era, precisamente, si la señora Hernández era una contratista independiente. Dicho foro resolvió que era una empleada y el Tribunal de Circuito confirmó. Al hacerlo, dispuso del señalamiento de error hecho por TOLIC.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mirtha Hernández, Galo Beltrán
y la Sociedad de Gananciales

    Demandante recurrida

       v.

                        CC-97-695

Trans Oceanic Life
Insurance Company

    Demandada peticionaria


SENTENCIA


San Juan, Puerto Rico, a 30 de junio de 2000


Por los fundamentos expuestos en la Opinión que antecede, la cual forma parte integrante de la presente, se dicta Sentencia decretando que el despido fue uno injustificado motivado por discrimen por razón de edad avanzada sujeto a las disposiciones de la Ley Núm. 100. Se confirma la sentencia del Tribunal de Circuito de Apelaciones, Región Judicial de San Juan.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió una opinión de conformidad. El Juez Asociado señor Rebollo López disintió sin opinión escrita. Los Jueces Asociados señores Negrón García y Corrada del Río no intervinieron.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


Mirtha Hernández, Galo Beltrán
y la Sociedad de Gananciales

  Demandante recurrida

  v.                                          CC-97-695

Trans Oceanic Life
Insurance Company

  Demandada peticionaria


Opinión de conformidad emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 30 de junio de 2000.


Aunque estamos conformes con la Opinión del Tribunal, estimamos conveniente ampliar brevemente lo resuelto en ésta.

Coincidimos con la Opinión del Tribunal de que procede confirmar la sentencia del Tribunal de Circuito de Apelaciones y declarar con lugar la demanda por despido discriminatorio de la Sra. Mirtha Hernández contra la Trans Oceanic Life Insurance Company (TOLIC).

Consideramos que a partir de 1988 hubo un cambio sustancial en las relaciones entre TOLIC y la señora Hernández, que colocaron a ésta última en la categoría de empleado de la

referida corporación.    A partir de ese momento las relaciones contractuales entre ellos, en las que ella era una agente de seguros de TOLIC y por ende un contratista independiente[18], se modificaron.

Un examen detallado de los hechos refleja que la relación contractual entre la señora Hernández y TOLIC cambió sustancialmente una vez ocurrió el nombramiento del señor Touma como Director de Agencias.    Las intervenciones del señor Touma en el negocio de la señora Hernández justifican que se llegue a la conclusión de que las circunstancias de trabajo cambiaron de tal modo que alteraron la naturaleza de la relación, y de que, a partir de ese momento, el grado de control e injerencia de Trans Oceanic en el manejo de los asuntos de la señora Hernández la convirtieron en empleada, por lo cual procede una reclamación al amparo de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. 146 ss. (en adelante Ley 100).

Por otro lado, suscribimos también los pronunciamientos de la Opinión del Tribunal respecto al mecanismo para activar la presunción de despido discriminatorio de la Ley 100.    Coincidimos con el esquema probatorio pautado en la Opinión del Tribunal, el cual requiere del empleado demandante que presente alguna evidencia que sustente su reclamación.    En síntesis, deberá pasar prueba de que hubo un despido o un acto perjudicial; que éste se realizó sin justa causa; y que el empleado está ubicado dentro de la modalidad del discrimen bajo el cual reclama.

La posición que asume la Opinión del Tribunal es cónsona con nuestros pronunciamientos en McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113 (1989), donde expresamos que las demandas fundadas en despidos discriminatorios son acciones civiles ordinarias en las cuales

---

[18] Anteriormente resolvimos que el contrato suscrito entre un agente general y una Compañía de Seguros es uno de agencia, que genera una relación entre principal y distribuidor a quien le aplica la protección dispuesta por la Ley de Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278 *et seq*., Cándido Oliveras, Inc. v. Universal Insurance, Opinión del Tribunal de 7 de noviembre de 1996, 141 D.P.R. ____ (1996); Córdova Simonpietri v. Crown American, 112 D.P.R. 797 (1982). A tenor con esta normativa, el contrato suscrito entre la señora Hernández y TOLIC era uno de agente general y por ende, de contratista independiente.

el demandante tiene el peso y la obligación primaria de presentar prueba, y que éste puede hacer uso de las presunciones que le favorezcan.  McCrillis a la pág. 140.

En dicha ocasión, también establecimos que el demandante tiene que aportar prueba que establezca los hechos básicos y que la mera alegación de un hecho básico, sin que haya sido debidamente establecido, no activa una presunción que permita la inferencia de un hecho presumido.  McCrillis a la pág. 141.

Sin embargo, a diferencia de la Opinión del Tribunal, estimamos que la prueba requerida al empleado demandante con el propósito de establecer los hechos básicos alegados en la demanda puede ser presentada en vista evidenciaria, o puede ser sometida al tribunal sentenciador mediante prueba documental:  declaraciones juradas, récord de empleo, carta de despido, etc.  Es decir, somos de la opinión que no será indispensable la celebración de una vista evidenciaria en todos aquellos casos en que se inste una acción por despido discriminatorio. Lo determinante es que, de alguna manera, queden demostradas, a satisfacción del tribunal, las bases de la reclamación.


                    Federico Hernández Denton
                    Juez Asociado