EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Melvin Vélez Arroyo<br><br>Peticionario<br><br>v.<br><br>HPM Foundation, Inc. d/b/a Healthpromed; Aseguradora ABC, Inc.<br><br>Recurrido | Certiorari<br><br>2023 TSPR 38<br><br>211 DPR ___ |

Número del Caso: CC-2021-0480

Fecha: 30 de marzo de 2023

Tribunal de Apelaciones:

    Panel I

Abogados de la parte peticionaria:

    Lcdo. Manuel Porro Vizcarra
    Lcda. Myrmarie A. Laborde Vega

Abogado de la parte recurrida:

    Lcdo. Luis E. Pabón Roca

Materia: Sentencia con Opinión de Conformidad en parte y Disidente en parte.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Melvin Vélez Arroyo

    Peticionario

        v.

HPM Foundation, Inc. d/b/a Healthpromed; Aseguradora ABC, Inc.

    Recurridos

CC-2021-0480

SENTENCIA

En San Juan, Puerto Rico, a 30 de marzo de 2023.

Habiéndose expedido el recurso de epígrafe y examinada la Petición de *certiorari*, así como la *Oposición a petición de certiorari* que presentó la parte recurrida, se confirma la Sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad en parte y disidente en parte. Los Jueces Asociados señores Estrella Martínez y Colón Pérez disienten sin opinión escrita. El Juez Asociado señor Martínez Torres no interviene.

                Javier O. Sepúlveda Rodríguez
                Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Melvin Vélez Arroyo

    Peticionario

      v.               CC-2021-0480

HPM Foundation, Inc. d/b/a Healthpromed; Aseguradora ABC, Inc.

    Recurridos

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad en parte y disidente en parte

En San Juan, Puerto Rico, a 30 de marzo de 2023.

Una mayoría de este Tribunal emitió una Sentencia mediante la cual confirmó el dictamen recurrido del Tribunal de Apelaciones. Discrepo en parte y coincido en parte con este proceder. Mi discrepancia responde a que sostenemos un dictamen del foro apelativo intermedio que, a su vez, revocó una determinación correcta de la sala de instancia. En su resolución sumaria del caso, el foro primario adjudicó que: **(1)** el Sr. Melvin Vélez Arroyo (señor Vélez Arroyo o peticionario) era un empleado y no un contratista independiente para propósitos de su reclamo de despido injustificado al amparo de la *Ley de indemnización por despido sin justa causa*, Ley Núm. 80 de 30 de mayo

de 1976, según enmendada, 29 LPRA secs. 185a-185n (Ley Núm. 80), y **(2)** que la referida cesantía fue injustificada. Con relación a lo primero, la actuación del foro primario se adhirió a las normas sustantivas y procesales aplicables, por lo que el foro apelativo no debió dejarla sin efecto. Ante una solicitud de sentencia sumaria y su oposición, el Tribunal de Primera Instancia estaba llamado a identificar si existía controversia de hechos materiales sustanciales que impedían la disposición del caso ante sí por la vía sumaria. Luego de evaluar la documentación presentada por las partes, el foro primario no encontró controversia sustancial de hechos materiales. Esta determinación —**la que concierne específicamente a si el señor Vélez Arroyo era un empleado o un contratista independiente**— se sustenta en el expediente del caso de epígrafe. Por tanto, bajo los pronunciamientos que ha hecho este Tribunal en el pasado sobre el mecanismo procesal de sentencia sumaria, el foro primario tenía un deber ineludible de adjudicar conforme a derecho, como en efecto lo hizo. Por eso, el dictamen mayoritario de esta Curia es parcialmente errado toda vez que, al validar el proceder del foro apelativo intermedio, soslaya el de la sala de instancia que correctamente concluyó que el señor Vélez Arroyo era un empleado y no un contratista independiente.

Ahora bien, mi conformidad se basa en que, de otro lado, la Sentencia del Tribunal de Apelaciones tuvo el efecto de revocar la determinación sumaria del foro primario en cuanto a lo segundo. Como mencioné, el foro de instancia decretó que

el despido del señor Vélez Arroyo fue injustificado. Ese proceder fue incorrecto, pues el caso no se encontraba en la etapa procesal adecuada para hacer esa determinación de forma expedita. En ese sentido, estoy conteste con el dictamen de este Tribunal en torno a este otro particular. Por ende, y dando por probado que el señor Vélez Arroyo en efecto fungió como empleado, hubiera devuelto el caso al Tribunal de Primera Instancia, pero únicamente para que adjudicara la controversia sobre si medió justa causa o no para el despido.

Expongo a continuación el trasfondo fáctico pertinente a esta controversia y los fundamentos que sustentan mi postura.

**I**

El 23 de abril de 2018 el Sr. Melvin Vélez Arroyo presentó una *Querella* laboral por despido injustificado al amparo de la Ley Núm. 80, represalias, discrimen y violación a la política pública contra HPM Foundation, Inc. D/B/A Healthpromed (HPM), una empresa dedicada a proveer servicios de salud bajo un programa federal. El señor Vélez Arroyo se sometió al procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, conocida como la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2).

El peticionario alegó que para el 2012 trabajó para HPM como Director de Sistemas de Información. Sostuvo que previo a iniciar sus labores, le comunicó al principal oficial ejecutivo de HPM que en el 1997 había sido convicto por un

delito en el estado de Texas. Explicó que un tiempo después de su contratación, HPM terminó la relación laboral. Ello, supuestamente, tras advenir en conocimiento de que la víctima del delito fue un varón menor de edad.[1] Así las cosas, HPM negoció con el peticionario una suma de dinero a cambio de que este no volviera a trabajar para HPM.

Luego de varios años, el peticionario recibió una oferta laboral de HPM para regresar a trabajar como consultor, bajo un contrato de servicios profesionales, efectivo desde el 4 de enero de 2016. El contrato disponía que, entre otras cosas: tendría vigencia de un año, a partir de su autorización; se le prohibía al peticionario aceptar interés profesional ni particular en asuntos que resultaran en un conflicto de interés con HPM; debía trabajar 40 horas facturables a la semana divididas en 8 horas por día; si se excedía de las 8 horas diarias, las horas en exceso se guardaban como tiempo compensatorio; su trabajo se pagaba por hora y bisemanalmente; se le podía enviar a realizar trabajo fuera de Puerto Rico con gastos de viaje, estadía y dieta pagos; se le compensaban los costos relacionados a adquisición de manuales y otros equipos, programas y accesorios, previo presentación de factura; debía efectuar los pagos correspondientes al Seguro Social y los pagos de contribución sobre ingresos y presentar la certificación de

---

[1] En específico, alegó que HPM nunca objetó su contratación a pesar de saber que había sido convicto por el delito de "indecency with a minor", pero que al enterarse de que el menor había sido un varón y no una fémina, se le terminó el contrato como empleado. Véase: *Demanda*, Apéndice, pág. 41.

retención del Departamento de Hacienda; debía rendir informes sobre el estado de progreso de las actividades que realizaba, así como comentarios y recomendaciones pertinentes a solicitud de HPM o sus representantes; no podía subcontratar sus servicios ni contratar peritos ni otras personas sin la autorización previa de HPM, y todo trabajo, informe o programación que produjera el señor Vélez Arroyo sería propiedad de HPM.[2]

El 30 de enero de 2017 HPM reclasificó al señor Vélez Arroyo. A estos efectos, la entonces Directora Ejecutiva de HPM, la Lcda. Julia Vélez y el señor Vélez Arroyo formalizaron un *Contrato de Empleo* mediante el cual este asumiría los deberes de Director de Sistemas de Información del Departamento de Administración. Como Director debía supervisar, evaluar y administrar todo lo relacionado al área de informática y tecnología.[3]

---

[2] Véase, *Contrato de Servicios Profesionales*, Apéndice, págs. 143-149
[3] Véase, *Descripción de puesto*, Apéndice, pág. 194.
Las tareas esenciales del Director de Sistemas de Información eran:
1. Dirige, diseña y administra la informática y la tecnología de la información de planes estratégicos, políticas, programas, horarios de la tecnología de información y computación, organización y procesamiento de la data financiera y servicios de información empresarial para lograr metas y objetivos.
2. Dirige la información y la integridad de los datos de la empresa y sus unidades de negocio.
3. Desarrolla planes estratégicos e implementa los objetivos de las necesidades de la tecnología de información de la compañía para asegurar que las capacidades del sistema responden a las necesidades del crecimiento de la compañía y a sus objetivos.
4. Desarrolla y establece políticas, manuales de procedimientos y normas del funcionamiento y criterios para la informática y la tecnología de la información.
5. Evalúa el conjunto completamente y las operaciones de la informática y la tecnología de la información y da sus recomendaciones.
6. Asesora a la gerencia sobre los sistemas estratégicos y las conservaciones de integraciones en apoyo a las metas y objetivos del negocio.

No obstante, tras cuatro meses de la nueva contratación, el peticionario fue despedido el 31 de mayo de 2017. En la carta de despido, HPM especificó que la posición que ocupaba el señor Vélez Arroyo era una de confianza y que esta le había sido retirada.[4] Ante tal actuación, el peticionario presentó la *Querella* que originó el recurso de epígrafe, donde reclamó el pago de la mesada por entender que su despido fue injustificado.

En respuesta a la querella, HPM sostuvo que el despido fue justificado toda vez que el peticionario mantuvo una

---

7. Prepara los objetivos y presupuestos de la empresa para facilitar la captura, almacería, procesamiento de la información de una manera ordenada y eficiente.
8. Interactúa con los gerentes de la compañía en operaciones internas y externas que son impactadas por captura, almacenaje y procesamiento de Información.
9. Recomienda los contratos para la informática y la tecnología de la información y equipos.
10. Garantiza la seguridad de los sistemas de información, líneas de comunicación y equipo.
11. Supervisa el desarrollo, diseño e implementación de nuevas aplicaciones y cambios para los sistemas computadorizados existentes y paquetes de aplicaciones.
12. Responsable por el desarrollo, revisión y certificación de todos los procedimientos y planes para recuperación de desastres.
13. Supervisa el adiestramiento de los empleados en el manejo de equipos de su departamento.
14. Sirve de enlace entre la administración y los suplidores de su área.
15. Identifica tecnología de información emergente para ser asimilada, integrada y utilizada en la compañía.
16. Evalúa las nuevas tecnologías de compunción para determinar el valor potencial para la empresa.
17. Supervisa la continuidad y la viabilidad de mejoras en el sistema.
18. Establece la infraestructura de la compañía para apoyar y orientar esfuerzos en las distintas divisiones/departamentos/sitios en la informática y la tecnología de la información.
19. Establece y ejecuta a corto y largo plaza metas, objetivos, políticas y procedimientos operativos.
20. Responsable de los cambios, modificaciones, ampliaciones y cualquier otra intervención que personal externo realice en los servidores o cualquier parte del sistema.
21. Supervisa, evalúa y recluta al personal a su cargo.
Íd. págs. 194-195.

[4] Véase, *Moción de sentencia sumaria parcial*, Apéndice pág. 180.

actitud impropia e insostenible al ocultar información vital al momento de ser contratado y durante el periodo que duró la relación laboral.[5] Explicó que el historial del señor Vélez Arroyo como ofensor sexual de menores tenía un impacto sobre su empleo porque HPM es una organización que presta servicios a menores de edad y está ubicada en un área contigua a un plantel escolar.[6]

Más adelante, HPM presentó una *Moción de Sentencia Sumaria Parcial* y argumentó que el Tribunal debía determinar que no estaba obligada al pago de la mesada, pues el despido del peticionario se dio dentro del periodo probatorio. Apoyó su contención en el hecho de que, previo al contrato de empleo formalizado en 2017, el peticionario era un contratista independiente y no un empleado. Conforme a ello, HPM afirmó que el señor Vélez Arroyo solo fue su empleado desde el 30 de enero de 2017 hasta el 31 de mayo de 2017, lo que ocurrió dentro del periodo probatorio. Así las cosas, en su petición esbozó diecinueve (19) hechos incontrovertidos para sustentar la concesión de un dictamen sumario. En ellos, se limitó a mencionar las cláusulas de ambos contratos firmados entre las partes; es decir el Contrato de Servicios Profesionales y el Contrato de Empleo. También hizo referencia a ciertas porciones de la deposición tomada al señor Vélez Arroyo. Por esa razón arguyó que este último no tenía derecho a reclamar el pago de la mesada.

---

[5] Véase, *Contestación a la querella*, Apéndice pág. 59.
[6] Íd. pág. 60.

El señor Vélez Arroyo se opuso y alegó que, aunque firmó un contrato por servicios profesionales, la prueba demostraba que desde que comenzó a trabajar para HPM en el año 2016 hasta su despido en mayo 2017 trabajó como Director de Sistemas de Información. Como prueba, presentó la *Evaluación de Desempeño y Desarrollo* que HPM le realizó en el mes de marzo de 2017. Allí se evaluó la labor del señor Vélez Arroyo para los meses de enero a diciembre de 2016 cuando este aún fungía como consultor independiente.[7] A este se le evaluó utilizando como criterios las tareas que debía realizar el Director de Sistemas de Información.[8]

Específicamente, el documento de evaluación contenía la información siguiente:

HEALTHPROMED

EVALUACIÓN DE DESEMPEÑO Y DESARROLLO
[. . .]

EVALUACION CORRESPONDIENTE AL EMPLEADO:
NOMBRE: <u>MELVIN VÉLEZ ARROYO</u>     PUESTO: **DIRECTOR DE SISTEMAS DE INFORMACIÓN**

PERIODO DE EVALUACIÓN
**ENERO 2016-DIC 2016**

Además, en apoyo a su postura, el peticionario destacó que, antes del contrato de empleo, este ya tenía a su cargo

---

[7] Véase, *Evaluación de Desempeño y Desarrollo*, Apéndice, pág. 215. (Énfasis nuestro).

[8] En la *Evaluación de desempeño y desarrollo*, al señor Vélez Arroyo se le evaluó en una escala de: 3- Sobre Promedio; 2- Cumple; 1- Necesita Mejorar, y 0- No Cumple, utilizando como criterios las 21 tareas inherentes al puesto de Director de Sistemas de Información enlistadas en la nota al calce número 3. Véase, *Evaluación de Desempeño y Desarrollo*, Apéndice, págs. 215-218.

a dos empleados del departamento. Asimismo, acompañó extractos de su deposición, de la deposición de la Lcda. Ivonne Rivera Hernández -Directora Ejecutiva de HPM al momento del despido final- y ciertas hojas de evaluación de su desempeño las cuales, a su juicio, demostraban que era un empleado bajo el puesto de Director de Sistemas de Información desde enero 2016.

De igual manera expresó que, si HPM lo hubiera nombrado a una nueva posición en enero 2017, ello se hubiera reflejado en la *Hoja de Cambios* que preparó la oficina de recursos humanos. Arguyó que en la *Hoja de Cambios* se reflejó un cambio en el encasillado de "Ajuste de nómina" mas no en los encasillados "Nombramiento nuevo" o "Cambio de nombramiento".[9] Por tanto, alegó que la prueba demostraba que, de manera continua e ininterrumpida, este realizó las funciones de un empleado como Director de Sistemas de Información.[10] Por consiguiente, no podía concluirse sumariamente que fue despedido dentro de su periodo probatorio, puesto que este era empleado desde enero 2016. El peticionario expuso posteriormente que su presentación de una relación de hechos materiales y pertinentes ameritaban que "el caso [fuese] resuelto a su favor y/o [impedían] la adjudicación sumaria a favor de la parte querellada".[11] Cabe

---

[9] Véase, *Hoja de Cambios*, Apéndice pág. 225.
[10] Véase, *Oposición a moción de sentencia sumaria parcial*, Apéndice, pág. 213.
[11] Véase, *Moción solicitando se den por incontrovertidos hechos esenciales y pertinentes propuestos por la parte querellante y solicitando se señale fecha de juicio*, Apéndice pág. 238.

mencionar que los hechos presentados por el señor Vélez Arroyo en su oposición a la moción de sentencia sumaria, sustentados por la prueba que incluyó, no fueron controvertidos de ninguna forma por HPM en un escrito posterior.

Así las cosas, el 17 de mayo de 2021 el Tribunal de Primera Instancia notificó una *Sentencia Parcial* y declaró No Ha Lugar la moción de sentencia sumaria de HPM y Con Lugar la oposición del peticionario. Concluyó que la prueba documental que el señor Vélez Arroyo presentó era suficiente para establecer, sumariamente, la existencia de una relación empleado-patrono desde enero de 2016. Razonó que HPM ejercía un grado de control sobre el peticionario que excedía el velar únicamente por el cumplimiento de las funciones que se establecieron en el contrato de servicios profesionales. Puntualizó que el señor Vélez Arroyo tenía beneficios que, de ordinario, un contratista independiente no posee. De igual forma, destacó que se le evaluaba a base de factores que se toman en consideración al evaluar a un empleado. Finalmente, resaltó que los servicios que el peticionario prestaba eran una parte integral de HPM.[12]

---

[12] El foro primario entendió que los hechos siguientes demostraban que el señor Vélez Arroyo era un empleado: (1) a pesar de que firmó un contrato de servicios profesionales para fungir como un consultor, desde el comienzo se le informó que sería el Director de Sistemas de Información y se le evaluó como tal, proceso durante el cual se tomó en consideración su puntualidad, asistencia y aportación a la cultura organizacional; (2) aunque no estaba impedido de aceptar otro trabajo que no representara un conflicto de intereses, debía trabajar o facturar no menos de cuarenta (40) horas semanales; (3) debía rendir servicios profesionales a HPM y trasladarse fuera de Puerto Rico temporalmente, de ser necesario; (4) la compensación se pagaba a razón de $39.00 la hora, bisemanalmente, y el peticionario tenía derecho a tiempo compensatorio si se excedía las ocho (8) horas diarias; (5) las funciones del peticionario estaban previamente

Una vez el foro primario determinó que el señor Vélez Arroyo fue empleado de HPM desde 2016, procedió a decretar que su despido fue injustificado. Basó su análisis en el hecho de que, previo a su recontratación, HPM tenía conocimiento de que este había sido convicto para el año 1997 y, aun así, decidió reclutarlo nuevamente como Director de Sistemas de Información en 2016. Por consiguiente, adujo que HPM no podía despedirle de forma justificada por motivo de su convicción, pues lo recontrató con conocimiento de esa información. De esta forma, ordenó la continuación de los procedimientos respecto a la valorización de los daños y las demás causas de acción.

Inconforme, HPM recurrió al Tribunal de Apelaciones donde cuestionó la determinación de que existió un despido injustificado sin prueba alguna y sin escuchar los argumentos de HPM al respecto. Además, objetó que se concluyera que el señor Vélez Arroyo fue un empleado y no un contratista independiente desde el 2016, cuando ello no fue solicitado en la oposición que el peticionario presentó.

El foro apelativo intermedio dictó una *Sentencia* mediante la cual revocó el dictamen sumario basado en que: (1) ninguno de los remedios concedidos por el foro primario había sido solicitado por el peticionario en su moción en oposición a la solicitud sumaria de HPM y (2) existían hechos

_____

establecidas por HPM y este podía amonestar al señor Vélez Arroyo; (6) el peticionario ejerció las funciones típicas de un jefe de departamento; (7) el señor Vélez Arroyo laboraba desde las oficinas de HPM, y (8) el peticionario dependía de HPM como cuestión de realidad económica. Véase, *Sentencia Parcial*, Apéndice, págs. 255-257.

medulares en controversia que impedían la resolución sumaria.[13] En su dictamen, el foro intermedio no detalló qué hechos de la determinación del foro primario estaban incontrovertidos ni especificó los controvertidos, según exige la Regla 36 de Procedimiento Civil, infra, y su jurisprudencia interpretativa.

En desacuerdo, el señor Vélez Arroyo recurrió ante nos mediante un recurso de *certiorari*. Señaló que el foro intermedio incidió en determinar que el foro primario se excedió al concluir que entre él y HPM existía una relación obrero-patronal y que su despido fue injustificado.[14]

HPM compareció mediante *Oposición a petición de certiorari* y expuso que la moción de sentencia sumaria que presentó ante el foro primario tenía el propósito único de que se determinara si el peticionario era un contratista independiente o un empleado previo a que se le contratara formalmente como empleado. Puntualizó que la legitimidad del despido no fue abordada ni argumentada en la moción de sentencia sumaria, ni en la oposición que presentó el señor Vélez Arroyo. Por lo tanto, adujo que el foro primario violó su debido proceso de ley al disponer de un asunto, sin darle la oportunidad de presentar prueba a su favor.

**II**

### A. Sentencia Sumaria

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, permite

---

[13] El foro apelativo entendió que existía controversia sobre si el peticionario era un contratista independiente o un empleado.
[14] *Certiorari*, pág. 14.

adjudicar sumariamente una controversia de estricto derecho donde no existan hechos materiales y sustanciales en controversia. Rosado Reyes v. Global Healthcare Group, LLC., 205 DPR 796, 809 (2020). El objetivo primordial de este mecanismo es que las controversias obtengan una solución justa, rápida y económica. Íd., pág. 808; Zapata Berríos v. J.F. Montalvo Cash & Carry Inc, 189 DPR 414, 430 (2013).

Así, la sentencia sumaria procederá si la parte promovente demuestra "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes". Regla 36 de Procedimiento Civil, supra. Hemos definido hecho material sustancial como un hecho "que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Mejías v. Carrasquillo, 185 DPR 288, 299 (2012).

Por lo que "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". Ramos Pérez v. Univisión, 178 DPR 200, 214 (2010). Al mismo tiempo, "[t]oda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a esta", si se opone conforme a la Regla 36 de Procedimiento Civil. Mejías v. Carrasquillo, supra, pág. 300.

Igualmente, hemos enunciado que tanto este foro como el foro intermedio se encuentra en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. Meléndez González et al. v. M. Cuebas, 193 DPR 100,

118 (2015). En consecuencia, los foros apelativos estamos facultados para evaluar *de novo* la moción de sentencia sumaria bajo el prisma de "examinar el expediente de la manera más favorable [a] la parte que se opuso a la moción de sentencia sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". Íd., pág. 116. Es imperativo que se estudien "tanto los documentos que acompañan la solicitud como los documentos de la oposición para determinar si existe o no controversia de hechos". Rosado Reyes v. Global Healthcare Group, LLC., supra, pág. 809. La parte promovida no puede colegir que por medio de conjeturas y meras alegaciones coloca al juzgador o la juzgadora en posición para decidir a su favor. Meléndez González v. M. Cuebas, supra, pág. 136; Ramos Pérez v. Univisión, supra.

No obstante, el adjudicador o la adjudicadora debe ser precavido o precavida porque sólo "puede dictarse [sentencia sumaria] a favor o en contra del promovente, según proceda en derecho". Rosado Reyes v. Global Healthcare Group, LLC., supra, pág. 808. En este sentido, aunque la parte promovida no controvierta los hechos alegados mediante la solicitud de sentencia sumaria, el adjudicador o la adjudicadora no puede fallar automáticamente a favor de la parte promovente si esta no procede en derecho. Fernández Martínez et al. v. RAD-MAN, 208 DPR 310, 337 (2021).

En esencia, "se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios

y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente". Rosado Reyes v. Global Healthcare Group, LLC., supra, págs. 808-809; Regla 36(e) de Procedimiento Civil, supra.

**B. Ley Núm. 80**

La Ley Núm. 80 es el resultado de varias legislaciones aprobadas en Puerto Rico, con el fin de proteger a los trabajadores y las trabajadoras en sus empleos dándole mayor protección ante situaciones de despidos sin justa causa. Esta legislación brinda a los empleados y las empleadas el derecho a ser indemnizado o indemnizada por su patrono ante un despido injustificado. Díaz v. Wyndham Hotel, Corp., 155 DPR 364, 375 (2001); Vélez Rodríguez v. Pueblo International, Inc., 135 DPR 500 (1994). Ahora bien, para que una trabajadora o un trabajador sea acreedor del derecho a indemnización como resultado de un despido sin justa causa, este o esta debe ser: (1) un empleado o empleada que trabaje para un patrono mediante remuneración; (2) bajo contrato sin tiempo determinado, y (3) fuera despedido o despedida sin que haya mediado una justa causa. Véase, Art. 1 de la Ley Núm. 80, supra; Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 230 (2015).

Como cuestión de umbral, para que un trabajador o una trabajadora que ha sido despedido o despedida pueda disfrutar de las protecciones reconocidas en la Ley Núm. 80 tiene que

probar que existió una relación empleado-patrono. Véase, Rodríguez Gómez v. Multinational Insurance Co., 207 DPR 540 (2021) (Sentencia). Por tanto, si la persona que reclama el remedio de la Ley Núm. 80 no es un empleado o empleada, no se puede exigir la indemnización por despido sin justa causa provisto por la Ley Núm. 80.

### C. Contratista Independiente

No siempre es fácil distinguir entre un empleado y un contratista independiente puesto que el título utilizado por las partes no es concluyente. Farinacci Fernós, Interpretación liberal: presunciones probatorias en la legislación protectora del trabajo, 83 Rev. Jur. UPR 15, 28 (2014). Tampoco es determinante ni decisivo lo que disponga el contrato laboral al momento de definir la relación entre las partes. Íd. Por ello los tribunales deben "ponderar las circunstancias en las que se lleva a cabo el trabajo". Íd.

En nuestro ordenamiento laboral, un empleado es una "persona que rinde servicios a un patrono y a cambio recibe de este un sueldo, salario, jornal, comisión, bono, adehala o cualquier otra cosa de compensación". Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 953 (2011); Farinacci Fernós, supra, pág. 28. Por otra parte, el contratista independiente es aquel que "dada la naturaleza de su función y la forma en que presta servicios[,] resulta ser su propio patrono". Whittenburg v. Col. Ntra. Sra. Del Carmen, supra, pág. 952.

Existirá una presunción incontrovertible de que una persona es un contratista independiente si cumple con todos los requisitos siguientes: (a) posee un número de identificación patronal; (b) ha declarado tener un negocio propio en las planillas de contribución sobre ingreso; (c) la relación se estableció mediante contrato escrito;  (d) se le ha requerido por contrato contar con las licencias o permisos necesarios para prestar los servicios, y (e) cumple con tres o más de los requisitos siguientes:  (1) mantiene control y discreción sobre la manera en que realizará los trabajos; (2) mantiene control sobre el momento en que realizará los trabajos; (3) no se le requiere exclusividad en la prestación de los servicios; (4) tiene libertad de contratar empleados o (5) ha realizado inversiones en el negocio mediante la adquisición de herramientas, equipos, licencias o espacio de trabajo. Art. 2.3 de la *Ley de Transformación y Flexibilidad Laboral*, Ley Núm. 4 de 2017, 29 LPRA sec. 122b (Ley Núm. 4).

Aun si una persona no cumpliera con todos los requisitos anteriores para que exista una presunción incontrovertible, se podrá determinar que una persona es contratista independiente utilizando los criterios desarrollados mediante jurisprudencia. Hemos identificado una serie de características para determinar, y distinguir, si la persona es un empleado o una empleada o si, por el contrario, es un contratista independiente *bona fide*. Estos son: (1) naturaleza, extensión y grado de control que ejerce el patrono sobre la persona en la ejecución de la obra o trabajo;

(2) grado de juicio o iniciativa que despliega la persona; (3) forma de compensación; (4) facultad de emplear y derecho a despedir obreros; (5) oportunidad de incurrir en ganancias y el riesgo de pérdidas; (6) la titularidad del equipo y de las instalaciones físicas provistas por el principal; (7) retención de contribuciones; (8) si como cuestión de realidad económica la persona que presta el servicio depende de la empresa para la cual trabaja; (9) permanencia de la relación del trabajo, y (10) si los servicios prestados son una parte integral del negocio del principal o se pueden considerar como un negocio separado o independiente por sí mismos. Whittenburg v. Col. Ntra. Sra. del Carmen, supra, págs. 952-953; SLG Hernández-Beltrán v. TOLIC, 151 DPR 754, 768 (2000); Fernández v. ATPR, 104 DPR 464, 465 (1975).

Al realizar este análisis, hemos establecido que lo determinante es el criterio del grado de control que tiene la persona contratada para llevar a cabo su encomienda de manera verdaderamente independiente en contraposición al control que tiene la persona que contrata y se beneficia de sus servicios. SLG Hernández-Beltrán v. TOLIC, supra, pág. 768. Sobre los demás criterios hemos señalado que "no necesariamente será suficiente con que se cumpla uno de los criterios, como tampoco es necesario que se cumplan todos". Romero v. Cabrera Roig, 191 DPR 643, 661 (2014). Por ello, debemos considerar la totalidad de las circunstancias en cada caso y realizar un análisis integrado de los criterios. Íd., pág. 660.

## III

En su primer señalamiento de error ante este Tribunal, el señor Vélez Arroyo adujo que el foro intermedio incidió al determinar que existía controversia sobre hechos materiales que ameritaba la celebración de una vista en su fondo para dictaminar si él era contratista independiente o empleado. Expuso que el Tribunal de Apelaciones revocó al foro primario sin consignar los hechos materiales que encontró en controversia los cuales impedían resolver sumariamente que él era un empleado y no un contratista independiente.

Asimismo, en su segundo señalamiento de error el peticionario manifestó que el foro intermedio erró al decidir que el foro primario no podía resolver sumariamente que su despido fue injustificado. Argumentó a su favor que los tribunales pueden dictar sentencia sumaria a favor de una parte si del expediente surgen fundamentos suficientes para ello, aun si no se solicitó ese remedio.

Por otra parte, HPM sostuvo que la determinación del Tribunal de Apelaciones era correcta toda vez que la moción de sentencia sumaria "no pretendía que el Tribunal resolviera, si el despido era justificado por ese historial del peticionario, sino que la **única petición al Honorable Tribunal de Primera Instancia, era si la relación del peticionario con el patrono era de empleado o contratista**

**independiente"**.[15] En específico, puntualizó que la legitimidad del despido no se atendió en la moción de sentencia sumaria ni en la oposición. Por ello, alegó que el foro primario le privó de su debido proceso de ley al disponer de ese asunto sin darle la oportunidad de presentar prueba para establecer la justificación del despido.

Examinadas la moción de sentencia sumaria y la oposición, estimo que la **única** controversia que se sometió para disposición sumaria fue si el señor Vélez Arroyo era un empleado o un contratista independiente. Esto no solo surge de las alegaciones de las mociones, sino también de la prueba sometida en apoyo de esas alegaciones. Por lo tanto, el foro primario estaba en posición de resolver **exclusivamente** esa controversia.

Sin embargo, y luego de realizar un análisis de los hechos incontrovertidos presentados ante la consideración del foro primario, no albergo duda de que, la determinación de si el señor Vélez Arroyo era un empleado o contratista **era una de estricto derecho** que estamos en posición de resolver. Contrario a la apreciación del foro apelativo intermedio, el Tribunal de Primera Instancia no tenía hechos materiales sustanciales que estuviesen en controversia que le impidieran disponer de este asunto puntual por la vía sumaria. Por tanto, luego de examinar la prueba que tenía ante sí, correspondía aplicar el derecho y adjudicar la controversia. Veamos.

---

[15] Véase, *Oposición a petición de certiorari*, Apéndice pág. 7. (Énfasis nuestro).

Un contratista independiente es, para todos los efectos, su propio patrono. Dada la naturaleza de las funciones o servicios, este —entre otras cosas— mantiene control y discreción sobre la manera y el momento en que realizará los trabajos. Precisamente, el criterio de 'control' es el más importante al determinar si una persona es un contratista independiente o un empleado. SLG Hernández-Beltrán v. TOLIC, supra, pág. 768. No obstante, debemos examinar con detalle las características del trabajo del señor Vélez Arroyo considerando la totalidad de las circunstancias para concluir si este era un empleado de HPM o un contratista independiente. Para ello, veamos el desglose de sus tareas a la luz de los criterios jurisprudenciales.

*Grado de control*: Desde enero 2016 se le exigió al señor Vélez Arroyo cumplir con un mínimo de 40 horas facturables semanales divididos entre 8 horas diarias. Además, este tenía hora de entrada y salida; rendía informes sobre el estado de progreso de las actividades que realizaba, así como comentarios y recomendaciones pertinentes a solicitud de HPM o sus representantes.

*Discreción:* El señor Vélez Arroyo no podía subcontratar sus servicios ni contratar peritos ni otras personas sin la autorización previa de HPM. El peticionario era objeto de evaluaciones rigurosas sobre su trabajo, por lo que tenía que ceñir sus técnicas a los parámetros de HPM. Además, este tenía que presentarse en todas las reuniones convocadas por HPM sin potestad de posponerlas o cancelarlas.

*Facultad de emplear y derecho a despedir obreros*: Tenía bajo su cargo y supervisión a dos empleados del Departamento de Tecnología, a los cuales tenía que evaluar y rendir retroalimentación.

*Oportunidad de incurrir en ganancias y el riesgo de pérdidas:* HPM pagaba al señor Vélez Arroyo $39 por hora, bisemanalmente. Si este se excedía de las 8 horas diarias, tenía derecho a tiempo compensatorio. Esta compensación era pagadera independientemente de que HPM cumpliera o no con su proyección de ingresos.

*La titularidad del equipo y de las instalaciones físicas provistas por el principal:* El señor Vélez Arroyo tenía una oficina dentro de las instalaciones físicas de HPM, los instrumentos utilizados para realizar el trabajo le pertenecían a HPM. En la eventualidad de que este tuviera que adquirir algún instrumento de trabajo se le compensaba los costos relacionados a adquisición de manuales y otros equipos, programas y accesorios, previa presentación de factura.

De acuerdo con lo anterior, hemos establecido que no necesariamente será suficiente con que se cumpla uno de los criterios, como tampoco es necesario que se cumplan todos. El factor determinante es el grado de control. **Es forzoso concluir, pues, que el señor Vélez Arroyo no puede ser considerado su propio patrono**. Este le responde a HPM en cuanto a la manera en que realiza el trabajo, así como cuándo y cómo lo realiza.

Por otro lado, en los hechos particulares de este caso, al señor Vélez Arroyo se le contrató para que fungiera como consultor de HPM desde enero 2016.[16] Desde que comenzó su labor bajo el título de consultor, el señor Vélez Arroyo realizó **el mismo trabajo encomendado bajo el puesto de Director de Sistemas de Información**. Ello se sostiene de la propia evaluación que HPM le efectuó al señor Vélez Arroyo previo al cambio de puesto. Evaluación que no fue controvertida posteriormente por HPM. Según se desprende de la *Evaluación de desempeño y desarrollo*, **los criterios de evaluación eran idénticos** a las tareas esenciales que debía realizar una persona bajo el puesto de Director de Sistemas de Información.[17] Así, de un análisis comparativo entre la *Evaluación de desempeño y desarrollo* y la *Descripción de puesto* se puede colegir que, en efecto, al señor Vélez Arroyo

---

[16] Entre la descripción de tareas se encontraban:

   a. Fortalecer el Departamento de Tecnología, incluyendo entrenar recursos, aumentar los recursos de ser necesario (i.e. equipo, servidores, tecnología, personal, etc.) y de una forma escalonada de ser posible;
   b. Participar para viabilizar las nuevas facilidades en Carolina, o cualquier otro sitio que se adquiera por HMP para efectos de negocios;
   c. Participar en la definición del presupuesto del Departamento de Tecnología, según sea requerido por la gerencia de HPM Foundation, Inc.
   d. Representar a HPM en cualquier foro relacionado con el uso o la adquisición de tecnología de la Compañía, y
   e. Participar en la redacción de cualquier propuesta que requiera del conocimiento de tecnología que sea necesario redactar para propósitos de buscar fondos.

Véase: *Contrato de Servicios Profesionales*, Apéndice, págs. 181-187.

[17] De un análisis comparativo entre las notas al calce número 3 y 8 se puede colegir que, en efecto, al señor Vélez Arroyo se le evaluó utilizando como criterios las tareas esenciales de un Director de Sistemas de Información.

se le requería realizar la labor de un Director de Sistemas de Información bajo el andamiaje ficticio de un 'consultor'.

De igual manera, y en apoyo a la calificación del peticionario como 'empleado', de los documentos internos de HPM que constan en el expediente se desprende que al señor Vélez Arroyo se le refirió en todo momento como "empleado". Inclusive, este fue merecedor de bonos de productividad y de bono de Navidad.[18] Sabido es que, el bono de Navidad es un derecho laboral reconocido a todo empleado o empleada, a tiempo completo o tiempo parcial. *Ley del Bono de Navidad en la Empresa Privada*, Ley Núm. 148 de 30 de junio de 1969, 29 LPRA sec. 501 et seq., (Ley Núm. 148).[19] Por lo que, HPM reconoció y trató al señor Vélez Arroyo como su empleado. A tal punto, que le concedió el bono de Navidad y de productividad.

De todo lo pormenorizado se desprende inequívocamente que el foro primario tenía a su disposición amplia documentación, provista por las partes, que no denotaba controversia sustancial sobre hechos materiales. No cabía duda de que el señor Vélez Arroyo había firmado inicialmente un contrato por servicios profesionales en enero de 2016 y

---

[18] Véase, *Oposición a moción de sentencia sumaria parcial*, Apéndice, pág. 236.

[19] La Ley Núm. 148, según enmendada por la Ley Num. 4 del 2017, señala que todo patrono que emplee más de veinte (20) empleados durante más de veintiséis (26) semanas dentro del periodo de doce (12) meses pagara un 2% del total del salario devengado hasta la cantidad de seiscientos dólares ($600.00). Por otro lado, los que empleen veinte (20) empleados o menos vendrá obligado a conceder a cada empleado que haya trabajado por lo menos mil trescientas cincuenta (1,350) horas o más dentro de dicho periodo, se le dará un bono equivalente al dos por ciento (2%) del total del salario devengado hasta un máximo de trescientos dólares ($300.00).

posteriormente había sido contratado como empleado para inicios del 2017. Sin embargo, como se ha interpretado jurisprudencialmente, "el nombre no hace la cosa". Meléndez Ortiz v. Valdejully, 120 DPR 1, 24 (1987). Por tanto y, para probar que realmente fungió en todo momento como empleado de HPM, el señor Vélez Arroyo presentó documentación extensa para contextualizar su labor. Esta documentación no fue controvertida en ningún momento por HPM. Sometida la moción de sentencia sumaria y su oposición, el Tribunal de Primera Instancia, luego de hacer la debida relación de hechos incontrovertidos, estaba en posición de resolver conforme a derecho. Rosado Reyes v. Global Healthcare Group, LLC., supra, pág. 809.

**En consecuencia, y a la luz de la totalidad de las circunstancias, el señor Vélez Arroyo debió ser considerado como empleado de HPM, tal y como concluyó el foro primario.** Ello, debido a que desde enero 2016 este realizó el mismo trabajo por el cual fue ascendido oficialmente al puesto de Director de Sistemas de Información en enero 2017. No obstante, HPM, como una mayoría de este Tribunal —al validar la Sentencia del Tribunal de Apelaciones—, sostiene que el foro primario no podía conceder un remedio que no le fue solicitado. Se equivoca.

El adjudicador o la adjudicadora no puede fallar automáticamente a favor de la parte promovente si ello no procede en derecho. Íd. En este caso, tras examinar la posición de ambas partes, el foro primario concedió el

remedio que en derecho procedía. Esto es, resolver sumariamente que el peticionario era un empleado sujeto a los derechos de las legislaciones laborales porque de los documentos ante sí se sostenía tal determinación. De todas formas, es errónea la alegación de que fue un remedio no solicitado puesto que el peticionario hizo constar que su relación de hechos materiales ameritaba que "el caso **sea resuelto a su favor** y/o [impedían] la adjudicación sumaria a favor de la parte querellada".[20] Lo anterior, añadido al hecho de que fue el mismo HPM quien expresó que "la única petición al Honorable Tribunal de Primera Instancia, era si la relación del peticionario con el patrono era de empleado o contratista independiente".[21]

Fue la misma moción de sentencia sumaria la que catapultó el dirimir de la calidad profesional en la que actuó el señor Vélez durante el año anterior a su contratación formal como empleado. Es decir, al solicitar que se determinara que el peticionario era un empleado en periodo probatorio por haber fungido en primera instancia como contratista independiente, HPM de facto le pidió al foro primario pasar juicio sobre si en realidad se encontraba en dicho periodo. En otras palabras, **era necesario** el análisis jurídico sobre el carácter profesional del peticionario **previo** a su contratación formal como empleado para atender

---

[20] Véase, *Moción solicitando se den por incontrovertidos hechos esenciales y pertinentes propuestos por la parte querellante y solicitando se señale fecha de juicio*, Apéndice, pág. 238.
[21] Véase, *Oposición a petición de certiorari*, Apéndice pág. 7.

la petición de HPM. Resolver lo contrario es un grave sinsentido que menoscaba los postulados de economía procesal que cobijan a los tribunales.

Por otra parte, el señor Vélez Arroyo señaló como segundo error que el Tribunal de Apelaciones se equivocó al determinar que el foro primario se excedió en resolver sumariamente su despido fue injustificado. Por el contrario, HPM sostiene que el Tribunal de Primera Instancia le privó de su debido proceso de ley al resolver que el despido fue injustificado, sin darle la oportunidad de presentar prueba para establecer la justificación del despido. Coincido con la parte recurrida.

Tanto la moción de sentencia sumaria que presentó HPM como la oposición que presentó el peticionario se limitaron a argumentar y establecer los hechos incontrovertidos **sobre si el señor Vélez Arroyo era empleado o contratista independiente.** Ninguna de las alegaciones de la solicitud o la oposición a la sentencia sumaria trataban sobre la procedencia del despido. Por ello, esta no era la etapa procesal adecuada para adjudicar si el despido fue o no justificado. Incluso, el foro primario no hizo ninguna determinación de hecho con relación a las razones que motivaron el despido. Por lo tanto, el foro primario no podía resolver sumariamente esa controversia. Tiene razón HPM al argumentar que el foro primario no podía resolver la controversia sobre si el despido fue justificado o no, toda vez que eso no se discutió ni probó en la solicitud de

sentencia sumaria. En cuanto a este particular, la determinación hoy avalada por una mayoría del Tribunal se sostiene.

**IV**

Por los fundamentos expuestos, estoy conforme en parte y disiento en parte de la Sentencia que emitió una mayoría de este Tribunal.

Maite D. Oronoz Rodríguez
Jueza Presidenta