ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CODROY PROCTOR; GRACELYN MATHEW Y LA SOCIEDAD DE BIENES GANANCIALES<br><br>Apelada<br><br>v.<br><br>CARIBBEAN TRANSPORT LTD, CORPORACIÓN ABC, COMPAÑIAS DE SEGURO ABC Y DEF, GARVIN STOUTT, FULANO DE TAL<br><br>Apelante | **KLAN202500315** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2022CV00197<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio y el Juez Rodríguez Flores[1].

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 7 de agosto de 2025.

Comparece ante este foro XL Specialty Insurance Company, (XL Specialty o "parte apelante") y nos solicita que revisemos una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 18 de marzo de 2025. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Moción Solicitando se dicte Sentencia Sumaria en cuanto a Demanda de Terceros* presentada por Caribbean Transport LTD. (Caribbean Transport) y el Sr. Garvin Stoutt (señor Stoutt) (en conjunto, "la parte apelada"). A su vez, denegó la *Moción de Sentencia Sumaria* instada por XL Specialty.

---

[1] En virtud de la Orden Administrativa OATA-2025-057, se designa al Hon. Fernando L. Rodríguez Flores.

Número Identificador
SEN2025 _____

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia Parcial* apelada.

**I.**

El 13 de enero de 2022, el Sr. Codroy Proctor (señor Proctor), la Sra. Gracelyn Mathew y la Sociedad Legal de Gananciales compuesta por ambos, presentaron una *Demanda* en daños y perjuicios en contra de Caribbean Transport; Caribbean Transportation Services, Inc. (CTS); W.G.L. Freighting Co. (WGL); y el señor Stoutt, entre otros de nombres desconocidos.[2] En esencia, alegaron que debido al descuido y negligencia de un empleado de los demandados al utilizar una máquina elevadora (*forklift*), el señor Proctor fue víctima de un accidente catastrófico. Por consiguiente, al no haber cumplido con su deber de brindarle al señor Proctor un lugar seguro de trabajo, los demandados eran solidariamente responsables por los daños sufridos.

En respuesta, el 7 de junio de 2022, Caribbean Transport, WGL y el señor Stoutt presentaron su *Contestación a Demanda*, mediante la cual negaron la mayoría de las alegaciones.[3] Entre sus defensas afirmativas, expusieron que proveyeron un ambiente seguro de trabajo, y que habían seguido las medidas de seguridad y adiestramiento requeridas por las autoridades competentes. Añadieron, que el señor Proctor era un contratista independiente, siendo responsable de tener una póliza del Fondo del Seguro del Estado que le cobijara durante sus funciones.

Luego de varias incidencias procesales, el 31 de julio de 2023, Caribbean Transport, WGL y el señor Stoutt

---

[2] *Demanda*, anejo A, págs. 1-5 del apéndice del recurso.
[3] *Contestación a Demanda*, anejo B, págs. 6-14 del apéndice del recurso.

presentaron una *Demanda Contra Terceros Enmendada*, en contra de XL Specialty.[4] En esta, alegaron que Caribbean Transport tenía a su favor una póliza de seguros, núm. UM0054746MA20A, expedida por la parte apelante, la cual cubría reclamaciones como la del caso de autos. No obstante, sostuvieron que XL Specialty se negó a proveerles cobertura por los siguientes fundamentos: (1) que el accidente sufrido por el señor Proctor no estaba cubierto por tratarse de un "accidente de trabajo" sufrido por un "empleado" de la tercera demandante; y (2) que tampoco existía cubierta, porque en la solicitud de renovación de la póliza, relevante a este caso, se informó una dirección errónea.

Sobre el primer fundamento, aceptaron que la póliza de seguro incluía lenguaje que resultaba en la exclusión de accidentes laborales, sin embargo, que la misma se dejó sin efecto mediante endoso. En la alternativa, manifestaron que el señor Proctor era un contratista independiente, por lo que, la cláusula de exclusión no le era aplicable en la presente controversia. En cuanto al segundo fundamento, sostuvieron que la dirección postal y/o física era irrelevante al análisis que hizo la aseguradora para determinar si el riesgo que estaba considerando era asegurable y el costo de la prima. Por lo cual, esbozaron que los fundamentos alegados por la parte apelante eran inmeritorios.

El 31 de agosto de 2023, XL Specialty presentó su *Contestación a Demanda Contra Terceros Enmendada*.[5] En primer lugar, afirmó que, ni la póliza ni el endoso,

---

[4] *Demanda Contra Terceros Enmendada*, anejo E, págs. 60-70 del apéndice del recurso.
[5] *Contestación a Demanda Contra Terceros Enmendada*, anejo F, págs. 71-78 del apéndice del recurso.

contenían disposiciones algunas que dejaran sin efecto la exclusión de accidentes laborales. Así, negó que el señor Proctor prestara servicios como contratista independiente. Por tanto, sostuvo que Caribbean Transport era el patrono del señor Proctor y omitió su obligación de asegurarlo en la Corporación del Fondo del Seguro del Estado. Finalmente, esbozó que las incongruencias en la dirección física y/o postal constituían una tergiversación de un hecho material que anulaba la póliza.

El 21 de marzo de 2024, las partes presentaron una *Estipulación de Desistimiento Voluntario Bajo la Regla 39.1(a)(2)*.[6] Allí, adujeron que, ni WGL ni CTS eran dueñas de la barcaza objeto del litigio. Además, indicaron que dichas empresas no habían contratado los servicios del señor Proctor y que no estaban aseguradas por el apelante. Por lo cual, solicitaron que se desestimara la causa de acción únicamente en cuanto a WGL y CTS.

Atendida la solicitud, en la misma fecha, el foro primario emitió un dictamen, en el cual desestimó con perjuicio la causa de acción en contra de WGL y CTS.[7]

Luego de varios incidentes procesales, el 30 de agosto de 2024, XL Specialty presentó una *Moción de Sentencia Sumaria*.[8] En primer lugar, enumeró treinta y nueve (39) hechos, que, a su juicio no estaban en controversia. Por consiguiente, sostuvo que, considerando el grado de juicio e iniciativa que desplegaba el señor Proctor en su oficio, la forma de

---

[6] *Estipulación de Desistimiento Voluntario Bajo la Regla 39.1(a)(2)*, anejo G, págs. 79-80 del apéndice del recurso.
[7] *Sentencia Parcial*, anejo H, pág. 81 del apéndice del recurso
[8] *Moción de Sentencia Sumaria*, anejo J, págs. 133-254 del apéndice del recurso.

compensación y la permanencia en el empleo, se constituyó una relación empleado-patrono entre éste y Caribbean Transport. Por lo cual, planteó que la póliza expedida no proveía cubierta por los hechos alegados en la demanda. De otra parte, manifestó que al Caribbean Transport proveer una dirección incorrecta sobre el lugar en el cual iba llevar a cabo sus negocios, incurrió en tergiversación material que podía afectar los riegos que XL Specialty estaba dispuesta a asegurar. Por tal razón, aseveró que la póliza era nula *ab initio* y solicitó que se desestimara la *Demanda Contra Tercero Enmendada*.

El 3 de septiembre de 2024, la parte apelada presentó una *Moción Solicitando se dicte Sentencia Sumaria en cuanto a Demanda de Terceros*.[9] En esencia, señaló que el señor Proctor: (1) realizaba sus funciones sin supervisión de Caribbean Transport; (2) no se le proveía materiales, ni herramientas en el curso de la prestación de sus servicios; (3) cobraba en efectivo cuando prestaba sus labores; (4) era quien decidía la forma y manera en que brindaba sus servicios; (5) podía ofrecer servicios a otras embarcaciones y a otras compañías realizando iguales o similares funciones a las que rendía para Caribbean Transport. A tales efectos, razonó que, al aplicar los criterios establecidos en la jurisprudencia, el señor Proctor era un contratista independiente de Caribbean Transport, por ende, el accidente objeto de la demanda estaba cubierto por la póliza.

---

[9] *Moción Solicitando se dicte Sentencia Sumaria en cuanto a Demanda de Terceros*, anejo L, págs. 257-748 del apéndice del recurso.

De otra parte, reiteró que la dirección postal resultaba irrelevante y no afectaba el análisis de riesgo de la aseguradora. En cambio, aseveró que los datos relevantes para la póliza era el área geográfica donde la embarcación transitaría y atracaría, lo cual constaba en el acuerdo. Por lo cual, solicitó que se determinara que la póliza tenía plena eficacia y vigor y que cubría la reclamación de epígrafe. Además, reclamó costas y gastos, así como una partida por concepto de honorarios de abogado.

El 23 de septiembre de 2024, XL Specialty presentó su *Oposición a Moción Solicitando se dicte Sentencia Sumaria en cuanto a Demanda de Terceros*.[10] Adujo que, el señor Proctor durante un largo periodo de tiempo, efectuó tareas que eran controladas por Caribbean Transport y que constituían una parte integral de sus operaciones en Puerto Rico. Así, puntualizó que el señor Proctor no estaba en riesgo de sufrir ganancias o pérdidas económicas, por lo cual, se debía concluir que era un empleado. Por otro lado, expresó que la ubicación principal del riesgo asegurado, el lugar de cumplimiento y la ubicación del objeto del contrato de seguro resultaba material para determinar las leyes y la jurisdicción aplicable a la interpretación de la póliza. Sostuvo que, dichos factores podían influir en la decisión de la aseguradora respecto a si expedía o no la póliza. Por tanto, planteó que la omisión de identificar correctamente cual era la dirección del asegurado constituía una omisión de hecho material que anulaba la póliza. Por último, arguyó que no ha procedido con

---

[10] *Oposición a Moción Solicitando se dicte Sentencia Sumaria en cuanto a Demanda de Terceros*, anejo M, págs. 749-769 del apéndice del recurso.

temeridad. Alegó que existían documentos, así como el testimonió del señor Proctor que afirmaba que era empleado de Caribbean Transport. Ante ello, expresó que actuó conforme a derecho al denegar cubierta porque excluía los accidentes laborables.

Por su parte, en esta misma fecha, la parte apelada presentó una *Oposición de Caribbean Transport LTD. a Moción de Sentencia Sumaria Radicada por XL Specialty Insurance Co.*[11] En esencia, reiteró que, para los efectos de la póliza, lo material y relevante era el área o región geográfica donde el barco o los barcos operaban. Así, esbozó que la parte apelante ni siquiera intentó demostrar la materialidad de la dirección postal de Puerto Rico. Por otra parte, aseveró que XL Specialty erró en la aplicación de los criterios establecidos para determinar si una persona era un contratista independiente. Manifestó que, Caribbean Transport no supervisaba las funciones del señor Proctor; que éste les proveía servicios a otras empresas; que sólo cobraba cuando desempeñaba sus labores; y que no le hacían las retenciones de ley. Por tanto, razonó que el señor Proctor era un contratista independiente.

Luego de evaluar la evidencia presentada por las partes, el 18 de marzo de 2025, el foro primario notificó la *Sentencia Parcial* apelada.[12] Mediante la cual, realizó las siguientes determinaciones de hechos:

1. Caribbean Transport es una compañía de carga marítima que lleva operando más de treinta (30) años.

2. Caribbean Transport no tiene otras oficinas, aparte a las localizadas en Tórtola.

---

[11] *Oposición de Caribbean Transport LTD. a Moción de Sentencia Sumaria Radicada por XL Specialty Insurance Co.*, anejo N, pág. 770-789 del apéndice del recurso.
[12] *Sentencia Parcial*, anejo Q, págs. 1205-1233 del apéndice del recurso.

3. Caribbean Transport no tiene oficinas en Puerto Rico.

4. Caribbean Transport nunca ha tenido oficinas en Puerto Rico.

5. La única relación de Caribbean Transport con Puerto Rico es colectar cargo en el muelle y salir. Caribbean Transport no descarga carga en Puerto Rico.

6. El agente marítimo de Caribbean Transport, Ltd. en Puerto Rico es Nieves Maritime.

7. El señor Ricardo Vázquez Nieves es el presidente y dueño de Nieves Maritime Corp. desde el 2000.

8. Nieves Maritime se encarga de realizar los pagos correspondientes a la Autoridad de Puertos a nombre de Caribbean Transport, Ltd. La Autoridad de Puertos envía las facturas a Nieves Maritime.

9. La función del señor Ricardo Vázquez como presidente de Nieves Maritime es darle servicios de consultoría, servicios de Aduana, Inmigración, Agricultura, Guardia Costanera, Autoridad de los Puertos y todo aquello que soliciten los dueños y operadores de los barcos.

10. Caribbean Transport ha sido cliente de Nieves Maritime por aproximadamente cincuenta (50) años.

11. Lorraine Stoutt ha sido la Directora General de Caribbean Transport, Ltd. por los pasados treinta a treinta y cinco (35) años.

12. Las oficinas de Caribbean Transport, donde Lorraine Stoutt ejerce sus funciones, están localizadas en Purcell, Tórtola.

13. Lorraine Stoutt se encarga de velar por el funcionamiento del día a día de las oficinas de Caribbean Transport.

14. Garvin Stoutt es el Director de Operaciones de Caribbean Transport, Ltd., forma parte de la Junta de Directores y es uno de los propietarios.

15. Garvin Stoutt comenzó a trabajar para Caribbean Transport, Ltd. hace veinte (20) años.

16. Garvin Stoutt, como Director de Operaciones, supervisa a los tripulantes de los barcos de Caribbean Transport, Ltd., incluyendo al capitán.

17. Caribbean Transport, LTD. es dueña de los barcos, Tortola Pride y Admiral Pride.

18. Los barcos de Garvin Stoutt eran y son operados por Caribbean Transport.

19. Codroy Proctor comenzó a trabajar en la industria de transporte de carga en barco, con su padre, desde los diecisiete (17) años.

20. Luego de vender sus barcos, Proctor comenzó a prestarle servicios a Caribbean Transport, Ltd. y a Garvin Stoutt.

21. Codroy Proctor no recibía entrenamientos por parte de Garvin Stoutt y/o Caribbean Transport, para realizar sus labores.

22. Codroy Proctor realizaba sus funciones sin supervisión de Caribbean Transport y no tenía empleados a su cargo.

23. Ningún empleado o representante autorizado de Caribbean Transport supervisaba la realización de sus labores.

24. Caribbean no le proveía a Codroy Proctor materiales ni herramientas en el curso ordinario de la prestación de sus servicios para que prestara los mismos.

25. Codroy Proctor cobraba por sus servicios cuando los prestaba.

26. Codroy Proctor era quien decidía la forma y manera en que prestaba sus servicios a Caribbean Transport.

27. Caribbean Transport le pagaba por los servicios en efectivo y no le hacían deducciones de ningún tipo.

28. Durante los últimos cinco (5) años que Proctor trabajó para Caribbean Transport, se le pagaba la suma de $500.00 semanales.

29. En cuanto al "petty cash", Caribbean Transport preparaba un cheque en Tortola y se lo entregaba al capitán del barco de Caribbean Transport o a Garvin Stoutt para que se lo llevara a Puerto Rico. Al salir de Tortola, Caribbean Transport le entregaba el "petty cash" al capitán del barco con un listado de personas a pagar en los puertos en Puerto Rico.

30. El "petty cash" se utilizaba para pagarle a los contratistas independientes que asistían a los barcos de Caribbean Transport en el puerto de San Juan. Estos contratistas son los que se encargaban de contar la carga, recibirla y cubrirla.

31. Luego de realizar los pagos a los contratistas, el capitán del barco creaba un registro ("log") y se lo entregaba a la contable de Caribbean Trasnport, Patricia Zwaan. En dicho "log" aparecían los pagos realizados a Codroy Proctor y demás contratistas.

32. Los servicios que prestaba Codroy Proctor para Caribbean Transport eran recibir y verificar la carga que llegaba en los camiones a los muelles, antes que la montaran al barco.

33. Codroy Proctor realizaba sus funciones sin supervisión de Caribbean Transport.

34. Durante el tiempo que Proctor prestó sus servicios, los barcos de Caribbean Transport venían a Puerto Rico una (1) vez por semana.

35. Para el mes de enero de 2021, los barcos de Caribbean Transport llegaban a Puerto Rico los miércoles a las 7:00am, recibían carga los miércoles y jueves y; salían de San Juan rumbo a Tórtola los viernes en la mañana.

36. Por los pasados treinta (30) años, las operaciones de Caribbean Transport en Puerto Rico han sido las mismas.

37. En el Muelle 10 de San Juan, Proctor recibía la carga de los camiones y la cubría con una lona hasta que llegaran los barcos a recogerla los miércoles o jueves desde las 8:00am.

38. Codroy Proctor podía prestar servicios a otras embarcaciones y otras compañías realizando iguales o similares funciones las que rendía para Caribbean Transport.

39. El 14 de enero de 2021, Codroy Proctor se encontraba realizando labores de recibo de carga para Caribbean Transport, Ltd. en el Muelle 10 de San Juan.

40. El 14 de enero de 2021, Codroy Proctor sufrió un accidente en el Muelle 10.

41. Para el 14 de enero de 2021, el señor Filbert Jackson era parte de la tripulación de la embarcación Admiral Pride y empleado de la Caribbean Transport, Ltd.

42. El señor Filbert Jackson era el conductor del montacargas (*forklift*) objeto del accidente.

43. Para el mes de enero de 2021 el barco Admiral Pride llegaba a Puerto Rico los miércoles a las 7:00am; recibía cargo los miércoles y jueves y; salía de San Juan rumbo a Tortola los viernes en la mañana.

44. Patricia Zwaan reside en Tórtola y es contable en la compañía DPS Caribbean Ltd. Dicha compañía posee un contrato para brindar servicios de contabilidad a Caribbean Transport, Ltd.

45. Como empleada de DPS Caribbean, la señora Patricia Zwaan ha brindado servicios de contabilidad a Caribbean Transport, Ltd. por más de veinte (20) años. La señora Zwaan se encarga de la nómina, cuentas por cobrar y cuentas por pagar.

46. El 1 de febrero de 2020, XL Specialty Insurance expidió la póliza número UM0054746MA20A a favor de Caribbean Transport.

47. En el Commercial Lines Policy, Common Policy Declarations aparece el nombre y dirección del

asegurado, Caribbean Transport y lee como sigue:

**Named Insured and Address:**
Caribbean Transport Ltd.
P.O. Box 9021422
San Juan, PR

48. El *Hull and Machinery, Protection and Indemnity Coverage Declarations and Vessel Schedule* designado con número HMPI 001 1019 contiene una cláusula titulada Vessel que dispone lo siguiente:

**VESSEL**

The Subject Matter of this insurance is the Vessel called the As Per Schedule of Vessels or by whatsoever name or names the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation, motor generators and other electrical machinery.

In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed responsibility therefore, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.

Notwithstanding the foregoing, cargo containers, barges and lighters shall not be considered a part of the Subject Matter of this insurance.

49. También, contiene una cláusula titulada Adventure que dispone lo siguiente:

**ADVENTURE**

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, services and trades; with leave to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but the Vessel may not be towed, except as is customary or when in need of assistance, nor shall the Vessel render assistance or undertake towage or salvage services under contract previously arranged by the Assured, the Owners, the Managers or the Charterers of the Vessel, nor the Vessel, in the course of trading operations, engage in loading or discharging cargo at sea, from or into another vessel other than a barge, lighter or similar craft used principally in harbors or inland waters. The phrase "engage in loading or discharging cargo at sea" shall

include approaching, leaving or alongside, or while another vessel is approaching, leaving or alongside the Vessel.

The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage or salvage activities, or date of sailing, or loading or discharging cargo at sea, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

50. La cláusula de *Protection and Indemnity* llamada "SP-23 (Revised 1/56)" contenida en la póliza expedida por XL Specialty Insurance dispone lo siguiente:

In consideration of the Stipulations Herein Named as of As Per Declaration Page, being Premium at a rate of As Per Schedule of Vessels.

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators, and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

Loss of Life, injury, and illness
(1) Liability for loss of life, or personal injury, or illness, of any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others.

51. La cláusula número once (11) del endoso titulado *Marine General Conditions* designado con el número IXI 403 0110 dispone lo siguiente:

**11 Contractual Liability Extension**

In consideration of the primum charge for this insurance, the coverage afforded under this policy is extended to insure the liability of the Assured arising out of hold harmless and/or indemnity agreements contained in such contracts which have entered into by the Assured for the furnishing of vessel services.

Any exclusion for crew and employees found elsewhere in this policy is hereby deleted insofar as the coverage afforded by this contractual liability extension is concerned. However, the coverage afforded by this contractual liability extension is subject to all other terms, conditions, exclusions, warranties and limitations of this policy.

The coverage afforded by this liability extension applies only to written contracts which have been entered into by the Assured prior to an accident/occurrence giving rise to a claim hereunder.

52. La cláusula número veintidós (22) del endoso titulado Marine General Conditions dispone:

**22 Navigation Warranty**

Caribbean Sea including Puerto Rico, UCVI, BVI, St. Martin, Anguila.

53. La carta fechada 7 de octubre de 2002 firmada con nombre Damary Ojeda dispone lo siguiente:

TO WHOM ITY [sic] MAY CONCERN:

BY THIS MEAN WE WANT TO STATE THAT MR. CODROY PROCTOR IS AN EMPLOYEE OF OUR COMPANY, CARIBBEAN TRANSPORT LTD.

MR. PROCTOR HAS A SALARY OF $3330.00USD ON A WEEKLY BASIS.[13]

SHOULD YOU NEED ANY OTHER INFORMATION, PELASE CALL OUT OFFICE AT (787)723-5831.

54. La certificación fechada 15 de febrero de 2005 firmada a nombre de Warren Stoutt dispone lo siguiente:

This is to certifiy that Codroy Proctor Mathew, Social Security Number XXX-XX-8887, is out Port Manager at San Juan and was paid $15,500.00 for the year ended on December 31, 2004.

55. La certificación fechada 28 de febrero de 2008 firmada a nombre de Warren Stoutt dispone lo siguiente:

This is to certifiy that Codroy Proctor Mathew Social Security Number XXX-XX-8887, is out Port Manager at San Juan and was paid $22,000.00 for the year ended on December 31, 2007.

56. La carta fechada 6 de abril de 2011 firmada con nombre Garvin Stoutt dispone lo siguiente:

To Whom It May Concern:

This letter is to certify that Mr. Codroy Proctor is employed at Caribbean Transport Ltd. Located at Pier 10, Puerta de TIERRA, San Juan, PR as cargo supervisor for the past 13 years.

Mr. Proctor with S.S.#XXX-XX-8887 and resident at Urb. Villa Carolina 206-2 Calle 512, Carolina, PR has a salary of $400.00 a week.

---

[13] Nótese que dicha carta disponía que el salario semanal del señor Proctor era **$300.00USD** y no $3330.00USD.

If we can be of any further assistance, please let us know.

57. El *Certificate of Incorporation* fue expedido el 30 de noviembre de 2009 por el *Registrar of Corporate Affairs* en Road Town, Tortola, Islas Vírgenes Británicas el cual contiene la dirección de Caribbean Transport LTD que lee como sigue:

Purcell Estate
P.O. Box 438
Road Town, Tortola.

En primer lugar, determinó que, en este tipo de póliza, la dirección física y/o postal no era material para la evaluación del riesgo que hacía la aseguradora. A tales efectos, concluyó que:

Para interpretar la póliza, lo determinante era el lugar en que se formó o expidió y entrego la póliza. Para evaluar los riesgos, lo determinante era la ruta o zona geográfica por la cual transitaban las embarcaciones. La particularidad de este tipo de seguro es que no cubre un lugar en particular, sino un objeto que transita por diferentes lugares en el cual podría estar sujeto a diferentes jurisdicciones.

Así, sostuvo que la dirección física de las oficinas podría ser relevante para atender asuntos administrativos, pero no para evaluar si se expedía o no una póliza. Por tanto, resolvió que no procedía anular la póliza expedida a favor de Caribbean Transport.

En segundo lugar, señaló que la póliza incluía una cláusula general de exclusión que disponía que el asegurador cubriría la responsabilidad por la pérdida de vida, lesiones personales y enfermedades de cualquier persona. No obstante, dicha cláusula excluía responsabilidad por daños a empleados que no eran marineros. A manera de excepción, cubriría si las partes acordaban un endoso específico a esos efectos. Así pues, tras examinar el expediente, determinó que no surgía ningún contrato o endoso de tal naturaleza. Por tanto,

concluyó que no se dejó sin efecto la cláusula general de exclusión.

Por último, evaluó si a la fecha del accidente, el señor Proctor era un empleado o un contratista independiente de Caribbean Transport. A esos fines, reiteró los factores desarrollados por la jurisprudencia para determinar si existía una relación contratista-principal. Así, evaluado los hechos del caso en conjunto con el derecho aplicable, resolvió que el señor Proctor era un contratista independiente y, en consecuencia, su reclamación estaba cubierta por la póliza expedida por XL Specialty. En virtud de lo anterior, declaró *Ha Lugar* la *Moción Solicitando se dicte Sentencia Sumaria en cuanto a Demanda de Terceros* presentada por la parte apelada el 3 de septiembre de 2024. A su vez, declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* presentada por XL Specialty el 30 de agosto de 2024.

Inconforme, el 14 de abril de 2025, XL Specialty presentó el recurso de *Apelación* de epígrafe, y le imputó al foro primario los siguientes errores:

> Erró el Tribunal de Primera Instancia al concluir, como cuestión de derecho, que Proctor era un contratista independiente y que, por tal razón, la póliza expedida por XL Specialty provee cubierta por los hechos objeto de la demanda.

> Erró el Tribunal de Primera Instancia al concluir que suplir direcciones distintas no constituye una tergiversación de hecho material que anule la póliza.

El 6 de mayo de 2025, emitimos una *Resolución* concediéndole a la parte apelada el término dispuesto en nuestro Reglamento para que presentara su alegato.

Así las cosas, el 14 de mayo de 2025, la parte apelada presentó su alegato en oposición.

Con las comparecencias de todas las partes, procedemos a atender la controversia ante nuestra consideración.

**II.**

**-A-**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR __ (2024); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018).

Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Oriental Bank v. Caballero García*, supra, pág. 679; *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo.

*Universal Ins. y otro v. ELA y Otros*, 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así la economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980; *Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 676; *Vera v. Dr. Bravo, supra,* pág. 334; PFZ *Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA*, supra, pág. 941; *Ramos Pérez v. Univisión*, 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo*, supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos,

debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.,* supra pág. 677; SLG *Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 678; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 434; *Rodríguez de Oller v. TOLIC*, 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo*, supra, págs. 333-334; *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia

sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA*, supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo*, supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no

presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.

Tercero, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**-B-**

En nuestro ordenamiento jurídico se ha definido la figura del contratista independiente "como aquella persona que dada la naturaleza de su función y la forma en que presta servicios resulta ser su propio patrono". *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 659 (2014). Por otra parte, se ha definido el empleado como aquel que "rinde servicios a un patrono y a cambio recibe de éste un sueldo, salario, jornal, comisión, bono, adehala o cualquier otra forma de compensación". *Whittenburg v. Col. Ntra. Sra. Del Carmen*, 182 DPR 937, 952 (2011). No obstante, existen situaciones en las cuales resulta difícil distinguir entre ambos conceptos,

dado que el título utilizado por las partes no es determinante. *Íd.* Es decir, las disposiciones del contrato laboral no son decisivas para determinar la naturaleza de la relación de las partes. *SLG Hernández-Beltrán v. TOLIC*, 151 DPR 754,766 (2000). A esos fines, la jurisprudencia ha desarrollados criterios para distinguir entre un empleado y un contratista independiente, a saber:

> (1) Naturaleza, extensión y grado de control que ejerce el patrono sobre la persona en la ejecución de la obra o trabajo;
>
> (2) Grado de juicio o iniciativa que despliega la persona;
>
> (3) Forma de compensación;
>
> (4) Facultad de emplear y derecho de despedir obreros;
>
> (5) Oportunidad de incurrir en ganancias y el riesgo de pérdidas;
>
> (6) La titularidad del equipo y de las instalaciones físicas provistas por el principal;
>
> (7) Retención de contribuciones;
>
> (8) Si, como cuestión de realidad económica, la persona que presta el servicio depende de la empresa para la cual trabaja;
>
> (9) Permanencia de la relación de trabajo; y
>
> (10) Si los servicios prestados son una parte integral del negocio del principal o se pueden considerar como un negocio separado o independiente por sí mismos. *Romero et als. v. Cabrer Roig et als.*, supra, pág. 660.

Así pues, para determinar el tipo de relación entre las partes, es necesario evaluar la totalidad de las circunstancias en conjunto con los criterios previamente esbozados. *Whittenburg v. Col. Ntra. Sra. Del Carmen*, supra, pág. 953. Además, cabe señalar que "no necesariamente será suficiente con que se cumpla uno de los criterios, como tampoco es necesario que se cumplan todos." *Romero et als. v. Cabrer Roig et als.*, supra, pág. 661.

**III.**

Según los principios expuestos, al revisar una sentencia sumaria, este foro apelativo debe examinar, en primer lugar, si la solicitud de remedio sumario, así como su oposición, cumplieron con los requisitos de forma que establece la Regla 36 de Procedimiento Civil, *supra*. Luego de revisar las solicitudes de sentencia sumaria instadas por XL Specialty y la parte apelada, así como sus correspondientes oposiciones, este Tribunal concluye que los escritos cumplieron con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*.

A su vez, luego de un análisis cuidadoso de los hechos incontrovertidos esbozados por el foro primario, concluimos que las determinaciones emitidas encuentran apoyo en los documentos que obran en autos y no existe controversia genuina sobre los hechos materiales del caso. Por ello, acogemos las determinaciones de hechos incluidas en la *Sentencia Parcial*. Así pues, corresponde revisar si el foro primario aplicó correctamente la norma jurídica establecida para la controversia.

Expuesto lo anterior, procederemos a revisar los señalamientos de error planteados por XL Specialty. En su primer señalamiento de error, alega que incidió el foro primario al concluir que el señor Proctor era contratista independiente, y que, por ende, la póliza emitida otorgaba cobertura sobre los hechos de la demanda. Primeramente, sostiene que tomando en consideración el grado de control que ejercía Caribbean Transport sobre el señor Proctor, la forma de compensación, el horario de trabajo y la permanencia en

el empleo, se estableció una relación patrono-empleado. A tales efectos, indica que, conforme a las disposiciones de la póliza, no se proveerá cobertura por incidentes cubiertos por leyes de compensación. Por lo cual, argumenta que al ser el señor Proctor un empleado de Caribbean Transport y la reclamación surgir de un accidente laboral, la póliza no provee cubierta para los daños alegados.

En cuanto a su segundo señalamiento de error, arguye que erró el foro primario al concluir que suplir direcciones diferentes no constituía una alteración relevante de los hechos que justificara la nulidad de la póliza. Reitera que la ubicación principal del riesgo asegurado, el lugar de cumplimiento y la ubicación del objeto del contrato de seguro resultan pertinentes para determinar las leyes y la jurisdicción aplicable a la interpretación de la póliza. Por tanto, plantea que la omisión de identificar correctamente la dirección del asegurado constituye una omisión de hecho material que anula la póliza.

Mientras que, la parte apelada alega que el foro *a quo* no cometió los errores señalados. En primer lugar, alega que, conforme a los criterios desarrollados jurisprudencialmente, el señor Proctor era un contratista independiente. Indica que, este recibía mercancía en el muelle para varias compañías e incluso, para la fecha del accidente iba a rendir servicio para el Sr. Clyde Chawell y Caribbean Transport, dos operadores distintos. De igual forma, señala que el señor Proctor ofrecía su labor cuando lo llamaban, no se le ejercía ningún grado de control y tampoco se le

retenía contribuciones sobre ingresos. Por lo cual, esboza que era un contratista independiente.

Respecto a los planteamientos de nulidad de póliza, aduce que los argumentos del apelante son inmeritorios. Manifiesta que, para acarrear la severa penalidad de nulidad de póliza, la representación errónea debe ser material para el análisis de riesgo que realiza la aseguradora. Por ello, asevera que la dirección postal era irrelevante para evaluar el riesgo a asumirse y para determinar la cantidad a cobrarse como prima en un caso como el de autos donde el objeto del seguro es un bien mueble.

Para resolver la presente controversia, nos resulta indispensable establecer la naturaleza de la relación entre el señor Proctor y Caribbean Transport. Es decir, determinar si existía una relación patrono-empleado o una de principal y contratista independiente. No obstante, en ocasiones no es aparente esta distinción dado que la persona puede exhibir características de ambas categorías. A tales efectos, el Tribunal Supremo ha desarrollado los siguientes criterios para distinguir entre un empleado o contratista independiente *bona fide*: (1) naturaleza, extensión y grado de control que ejerce el patrono sobre la persona en la ejecución de la obra o trabajo; (2) grado de juicio o iniciativa que despliega la persona; (3) forma de compensación; (4) facultad de emplear y derecho de despedir obreros; (5) oportunidad de incurrir en ganancias y el riesgo de pérdidas; (6) la titularidad del equipo y de las instalaciones físicas provistas por el principal; (7) retención de contribuciones; (8) si, como cuestión de realidad económica, la persona que presta el servicio depende de

la empresa para la cual trabaja; (9) permanencia de la relación de trabajo; y (10) si los servicios prestados son una parte integral del negocio del principal o se pueden considerar como un negocio separado o independiente por sí mismos. *Romero et als. v. Cabrer Roig et als.*, supra, pág. 660.

Ahora bien, el señor Proctor le prestaba servicios a Caribbean Transport. Estas labores consistían en recibir y verificar la carga que llegaba en los camiones a los muelles antes de que fuese embarcada. Dichas funciones se realizaban sin supervisión o entrenamiento alguno por la parte apelada. De igual modo, al señor Proctor no se le proveía materiales ni herramientas en el curso ordinario de la prestación de sus servicios y tampoco tenía empleados a su cargo. Así pues, era él quien decidía la forma y manera en la cual ofrecía sus labores. Dicho esto, cobraba en efectivo cuando prestaba sus servicios y no se le hacía deducciones de ninguna índole. Además, el señor Proctor podía ofrecer su labor a otras embarcaciones y otras compañías realizando similares funciones a las que le ofrecía a la parte apelada. Evaluadas las circunstancias del caso en conjunto con los criterios previamente esbozados concluimos que el señor Proctor era un contratista independiente. Por tanto, la póliza expedida por XL Specialty proveía cubierta a la reclamación de epígrafe.

Respecto el segundo señalamiento de error, el apelante alega que suministrar una dirección incorrecta constituye un hecho material que anula la póliza. Asevera que la dirección influye en la decisión de expedir o no la póliza, así como en la prima a pagar. De otra parte, sostiene que la ubicación resultaba

material para determinar las leyes y la jurisdicción aplicable a la interpretación de la póliza.

En primer lugar, XL Specialty no presentó argumento en cuanto a la materialidad de la ubicación para efectos del análisis del riesgo. Es decir, concluyó que suplir una dirección física y/o postal errónea podía afectar el perfil del riesgo asegurado, sin presentar fundamento al respecto. De igual forma, tampoco nos trajo a nuestra atención cláusula o disposición que hiciera relevante la dirección de Caribbean Transport en la interpretación de la póliza. Dicho esto, es preciso señalar que, en ausencia de una regla federal, la ley estatal aplica de forma supletoria a los contratos marítimos. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70 (2024). Ante ello, determinamos que, debido a las particularidades del caso de marras, la ubicación de la parte apelada resulta inmaterial para la interpretación de la póliza.

En virtud de todo lo anterior, concluimos que el foro primario no incurrió en los errores señalados.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones